IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GENEVIEVE IDAR, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF AI, DECEASED; AND AS NEXT FRIEND OF EI, A MINOR; AND AS NEXT FRIEND OF AI, A MINOR; AND AS NEXT FRIEND OF EI, A MINOR; AND AS NEXT FRIEND OF DI, A MINOR; AND AS NEXT FRIEND OF NI, A MINOR<br><br>Plaintiff,<br><br>v.<br><br>COOPER TIRE AND RUBBER CO.<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:10-cv-00217<br>JURY |

**DEFENDANT COOPER TIRE & RUBBER COMPANY'S
MOTION FOR RECONSIDERATION**

Defendant Cooper Tire & Rubber Company ("Cooper") respectfully moves the Court to reconsider the November 11, 2010 Protective Order (Doc. 35) (the "Protective Order") entered in this lawsuit and in support thereof would show the Court as follows[1]:

**I. SUMMARY OF ARGUMENTS**

1.  The Protective Order is identical to the one proposed by Plaintiffs and essentially makes Plaintiffs' counsel an unfettered clearinghouse for Cooper's confidential design, manufacturing and operational documents that may be produced by Cooper in this lawsuit. Further, the Protective Order is virtually identical to the interim protective order entered in the Ford/Firestone

---

[1] In making this Motion to Reconsider, Cooper is not waiving and re-urges in their entirety all arguments previously made to the Court in its Motion for Entry of Protective Order filed on September 17, 2010 (Doc. 28) and incorporates all such arguments and evidence filed therewith, including but not limited to the September 14, 2010 Affidavit of Anthony E. Brinkman, herein by reference in their entirety.

multidistrict litigation, which consisted of hundreds of cases and followed issuance of a large tire recall. Such a wide-reaching protective order was designed for use in unique situations such as the Ford/Firestone multidistrict litigation and is not necessary or appropriate in this case, which unlike the Ford/Firestone litigation, involves the alleged failure of one specific tire (a Cooper Trendsetter SE, size P215/75R14), manufactured to one specific Green Tire Specification ("GTS") 2708, at one plant (Cooper's Tupelo, Mississippi plant), during one production week, February 23, 2003 – March 1, 2003.

2. The Protective Order entered by the Court does not adequately protect Cooper's trade secrets. The Protective Order creates an unfair burden on Cooper, as it would any entity seeking to protect its *property interest* in trade secrets while addressing civil discovery in a tort case. Such protective orders offer so little protection that defendants are faced with a Hobson's choice of either litigating or settling a case, not due to the intrinsic merits of a plaintiffs' case or demands, but rather by the likelihood of irreparable harm stemming from disclosure of its trade secrets. "Sharing" protective orders erode the "level playing field" of our system of justice. Civil disputes between parties are to be resolved on their merits, and not under express or implied threats of catastrophic loss of a corporation's trade secrets, its very life blood.

3. In light of the Protective Order entered by the Court, Cooper is willing to make certain compromises as set forth in its revised proposed protective order (Exhibit A) to try to address Plaintiffs' concerns while still sufficiently protecting Cooper's trade secrets. Cooper's revised proposed protective order, a copy of which is attached hereto as Exhibit A, is intended not to hamper or thwart legitimate discovery, but as a means to facilitate discovery by protecting Cooper's discoverable trade-secret information from dissemination beyond this suit and ensure the return of this information to Cooper at the conclusion of this lawsuit. As with its originally

proposed protective order, Cooper's revised proposed protective order was drafted with the best interests of *all* parties in mind by allowing Plaintiffs to obtain the information they need while also sufficiently protecting Cooper's trade secrets and confidential commercial information.

4. Cooper has been, and remains, willing to engage in good faith discovery to allow resolution of the case at bar. However, Cooper respectfully requests that the Court reconsider the Protective Order it entered in this lawsuit on November 11, 2010 and replace such Protective Order with Cooper's revised proposed protective order (Exhibit A) that will best serve both parties by allowing Plaintiffs to obtain the confidential documents and information they need to prosecute their claims *and* sufficiently protect Cooper's vital trade secrets. Cooper respectfully requests oral argument on this issue.

5. "Sharing" protective orders, such as the one that has been entered by the Court, are uncommon for good reason. "Sharing" of trade secret information with "similar litigants" in other cases against Cooper, as is contemplated in the Protective Order, not only unnecessarily places Cooper's trade secrets at risk, but potentially undermines the entire discovery process in those other cases. An order permitting such "sharing" allows plaintiffs in those other cases to circumvent the jurisdictional requirements under Texas law for discovery of trade secrets, and may very well undermine another judge's determination of the appropriate scope of discovery in a case before him or her.

6. The Protective Order entered by the Court improperly allows Plaintiffs to share Cooper's trade secret and confidential commercial information with other litigants without providing any notice to Cooper or any opportunity for Cooper to object. Under the current Protective Order, the contemplated "sharing" of Cooper's trade secret and confidential commercial information can also occur without any court supervision of Plaintiffs' dissemination of Cooper's trade

secrets. This is clearly improper under Texas law. To avoid such undesirable effects, the *overwhelming majority* of protective orders entered in cases against Cooper prohibit sharing and require the return of confidential material at the end of each case. Non-sharing protective orders almost identical to the one Cooper has proposed in this case have been entered by federal courts in Alaska, Arkansas, California, Florida, Georgia, Louisiana, Mississippi, Nevada, New Mexico, New York, Pennsylvania, Utah, and all four federal district courts in Texas. Cooper will provide the Court with copies of any of these orders that the Court wishes to inspect.

7. Permitting Cooper's trade secrets to be shared beyond this lawsuit makes it virtually impossible for this Court or Cooper to track who has accessed Cooper's trade secrets and confidential commercial information and to whom the information has been intentionally or unintentionally distributed. The mere process of attempting to determine which litigants may obtain Cooper's confidential and trade secret information is obviously susceptible to abuse. Assuming that the process is not abused, and even if the "sharees" were to sign a confidentiality agreement, Cooper's trade secrets are still not effectively protected. If it is discovered that an improper dissemination of Cooper's trade secrets has occurred, the "sharees" will simply blame one another and any accountability is lost. Once trade secrets and confidential commercial information reach a competitor or are made public (thus losing their trade secret status), Cooper's substantial investments in those trade secrets is lost[2], causing irreparable harm to the development of its competitive advantage, as well as financial damage that could vastly exceed the amount in issue in the controversy before this Court.[3]

---

[2] The vast investments in time and money expended by Cooper in developing its trade secret information, as well as in the protection and preservation of such trade secret information, was set forth in the September 14, 2010 Affidavit of Anthony E. Brinkman, which was attached as Exhibit B to Cooper's Motion for Entry of Protective Order previously filed in this lawsuit.

[3] The dangers regarding inadequate protections for trade secrets were articulated by the Eleventh Circuit in *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 n.43 (11th Cir. 1997) (noting "the potential economic harm of allowing Mazda's proprietary information to be disclosed to its commercial competitors may very well

8.     Moreover, even after this case ends, this Court shall be called upon to monitor and enforce the Protective Order entered in *this* case which permitted the sharing of confidential information with litigants in *other* cases. This is an unnecessary waste of valuable judicial time and resources, since the determinations of relevance and necessity should be considered and ruled upon by the court in which the subsequent case is pending, not this Court.

## II. ARGUMENTS & AUTHORITIES

### A. By allowing sharing, the Protective Order unnecessarily jeopardizes Cooper's trade secrets and does not take into consideration the law regarding discovery of trade secrets in Texas.

9.     Plaintiffs erroneously rely on *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987), to support their position that a "sharing" protective order should be entered in this case. The *Garcia* opinion is not controlling case law when plaintiffs seek to share trade secret information, as Plaintiffs are asking to be allowed to do in the present case. In fact, the holding of *Garcia* regarding the "sharing" of discovery has been effectively abrogated in regard to trade secrets by the Supreme Court of Texas in *In re Continental Gen. Tire, Inc.*, 979 S.W.2d 609 (Tex. 1998).

10.    In *In re Continental*, the Supreme Court of Texas recognized that the *Garcia* court did not consider or apply Texas Rule of Evidence 507 regarding protection of trade secrets and that "Rule 507 clearly contemplates a heightened burden for obtaining trade secret information." 972 S.W.2d at 613. The *In re Continental* court also held that if the requesting party meets its burden of showing that the defendant's trade secret information is necessary for a fair adjudication of its claims, the trial court may compel disclosure of that information subject to an appropriate protective order. The appropriate protective order entered by the trial court in *In re Continental*

---

exceed its potential liability in this case .... Mazda [could have determined that it] would have been better off to disclose *no* proprietary information and accept default. Although it would have lost the lawsuit, it would have been assured that its proprietary information would not end up in the public record").

contained the following characteristics, all of which are absent from the Protective Order entered in this case:

1. It limited access to the confidential information to the parties in that lawsuit, their lawyers, consultants, investigators, experts and other necessary persons employed by counsel to assist in the preparation and trial of that case;

2. It required that each person given access to the documents agree in writing to keep the information confidential; and

3. It required all documents be returned to the defendant at the conclusion of the case.

See *In re Continental*, 979 S.W.2d at 613, note 3. The Supreme Court of Texas in *In re Continental* did not authorize or sanction the issuance of a "sharing" protective order.[4]

11. Under Texas law, the discovery of trade secrets of a party is limited to the particular lawsuit in which such confidential information has been shown to be both relevant and necessary to the fair adjudication of the plaintiff's claims. *See, e.g., In re Bridgestone/Firestone*, 106 S.W.3d 730, 732-3 (Tex. 2003); *In re Continental*, 979 S.W.2d at 610-3. If Plaintiffs are allowed to share Cooper's trade secrets and confidential commercial information produced in *this* case with litigants in *other* cases, the requirement under Texas law for those other plaintiffs to make *any* showing of relevance or necessity in their case, let alone meet the heightened, fact-specific burden required by Texas law, is completely lost.[5]

---

[4] It should be noted that the United States District Courts for the Western District of Texas recognizes the need to protect a party's proprietary information and trade secrets as the standard form protective order used by the Western District (a) limits the receiving party's use of another party's confidential information produced in a case solely to the purpose of preparing and trying the case in which the documents are produced; (b) limits the disclosure of such confidential documents strictly to certain defined persons who are involved in the case in which the documents are produced; and (3) requires the return of all confidential documents and copies thereof to the producing party at the conclusion of the subject litigation (*see* Paragraphs 1, 3 and 14 of the Western District Protective Order Form, a copy of which is attached hereto as Exhibit B).

[5] Courts recognize the potential danger sharing of discovery poses to subverting discovery requirements. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (intervenor seeking modification of protective order to gain access to discovery "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein. Requiring a showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding.")

12.  Relevance and necessity are <u>case-specific</u> concepts, not generic ones. Therefore, each individual case involving tires made to unique designs for specific applications necessarily requires independent analysis. If plaintiffs in other lawsuits against Cooper desire the production of trade secret information, the judge in each respective case should determine whether the trade secrets being sought are necessary and relevant in the context of *that* case. *See In re Bridgestone/Firestone*, 106 S.W.3d at 732-3; *In re Continental*, 979 S.W.2d at 610-3; *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 330-1 (9th Cir. 1961); *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981); *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (5th Cir. 1991). In essence, a "sharing" protective order undermines the Texas Supreme Court's decisions in *In re Continental* and *In re Bridgestone/Firestone* and vests Plaintiffs in *this* case with complete control over dissemination of Cooper's intellectual property (its trade secrets and confidential commercial information) in *other* cases. Vesting such power upon the Plaintiffs in this case is improper as Texas law requires that the courts in those *other* lawsuits, not the Plaintiffs in *this* case, be the gatekeepers for dissemination of Cooper's trade secrets based upon the requisite findings of relevance and necessity of Cooper's trade secret information in such other cases.

13.  Furthermore, the legal requirement of an enhanced burden for discovery of trade secrets in other lawsuits is undermined if the litigants therein need only come to Plaintiffs' counsel in this lawsuit to obtain Cooper's confidential documents. Under such a scenario, the system of checks and balances required under Texas law to protect the confidential trade secret information of a party, which is to be applied by neutral judges not Plaintiffs or their counsel, is bypassed. Even if the judge in another case has determined that "Litigant X" has not met the standards for relevance and necessity in a particular jurisdiction, he or she need only go to Plaintiffs' counsel

in this case to make a deal on Plaintiffs' counsel's terms, thereby obtaining Cooper's trade secrets while circumventing the judicial process and the requirements under Texas law to properly obtain such information

**B. Courts have recognized a network of plaintiffs' attorneys intent on compromising Cooper's trade-secret protection.**

14. Cooper's concerns about detrimental dissemination of its confidential documents are real. Cooper has long suspected that individuals might have set up repositories of Cooper documents in direct violation of protective orders. A federal court has <u>confirmed</u> Cooper's suspicious. In *Moore-Coleman v. Cooper Tire & Rubber Co.*, the court was concerned that its protective order was being violated by a "freelance paralegal" (Lisa Pasbjerg) and a network of attorneys. The Special Master's report found:

> Even considering the limited number of e-mails and amount of correspondence recovered from Ms. Pasbjerg's computer by the forensic examiner, **a pattern of complete disregard for court orders** while appearing to remain aboveboard with the courts and defense counsel **is evident not only by Ms. Pasbjerg but also various counsel for the Plaintiffs.**

*See* September 9, 2008 Order, *Moore-Coleman v. Cooper Tire & Rubber Co.*, CV 203-050 (S.D. Ga. 2008), attached hereto as Exhibit C at 3 (emphasis added).

15. Of similar concern, last year the Department of Justice indicted two individuals on charges they "conspir[ed] to steal trade secrets from [a competitor tire company] and schem[ed] to defraud [that company] of confidential and proprietary information," in order to sell this information to a Chinese tire company. *See* March 6, 2009 Department of Justice Press Release, attached hereto as Exhibit D at 1. This illustrates that trade secrets owned by companies such as Cooper are highly sought-after and command great value on the open international market; indeed, the trade secrets providing million dollar shortcuts to designing and manufacturing tires have generated enough interest to entice people to commit crimes in order to obtain them.

16. It is hard enough policing misuse and improper dissemination of trade secret and confidential commercial information in cases where there is a good faith agreement to protect and preserve such information and proper non-sharing protective orders have been entered; it will be virtually impossible to do so under the current Protective Order. As shown in the *Moore-Coleman* case, good faith cannot be assumed by all. More stringent controls are required than are currently provided in the Protective Order entered in this case, including no sharing of trade secrets from case-to-case.

### C. The Protective Order violates Cooper's property rights.

17. Federal law recognizes that trade secrets constitute a valuable property interest. *In re Remington*, 952 F.2d at 1032 ("Confidential business information has long been recognized as property... Public disclosure of trade secrets extinguishes the owner's property rights."). Trade secrets are protected by the Takings Clause of the Fifth Amendment of the United States Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (states create property interests, but once created they are subject to the protections of the Fifth Amendment); *Union P.R. Co. v. Dept. of Revenue*, 10 OTR 235, 240 (Or. T.C. 1986). Once a property interest is created, a state agency cannot be used to effectuate a taking without first meeting the due process requirements of the Fourteenth Amendment to the U.S. Constitution. *Id.* at 569-70.

18. The Protective Order essentially uses the state's power to take Cooper's property — the trade secrets, confidential and proprietary business information that Cooper needs, keeps secret, and relies on in its business — and gives this property to third parties not before the Court. This is a transfer of Cooper's property without due process and a violation of Cooper's rights under the U.S. Constitution.

### D. The Protective Order is inadequate in several other respects.

19. In addition to the issue of improper sharing, the Protective Order is inadequate in numerous other respects. Among other things, the Protective Order entered by the Court:

   a. does not require that confidential material be returned at the conclusion of the case. Cooper's need for protection of its trade secrets and confidential commercial information does not end at the conclusion of this lawsuit. Cooper's trade secrets and confidential commercial information are the bedrock of Cooper's entire business. Only an order preventing the sharing of and requiring the return of Cooper's confidential documents at the conclusion of this litigation will effectively protect the confidentiality of Cooper's trade secrets and confidential commercial information. *See In re Continental*, 979 S.W.2d at 613 n.3 (holding that an adequate protective order limits access to the information during litigation and requires return of all information at the conclusion of litigation).

   b. does not address electronic storage and transmission of confidential material. Given the continuing technological advancements regarding communication of electronic information and the ease with which information can be transmitted electronically, it is utterly essential that the protective order place adequate restrictions on the transfer and storage of confidential material that is in electronic form in order to ensure Cooper's trade secrets remain secure.[6]

---

[6] Once Cooper's confidential materials are stored on an electronic storage system, such as a computer hard drive, that form of a "copy" cannot be returned to Cooper at the end of a case. Even if counsel for plaintiffs attempts to "delete" or "erase" Cooper's confidential material from his computer hard drive, the technology exists to allow the confidential material to be retrieved from the hard drive years later. In other words, the confidential document images are never truly "deleted" from the hard drive. As such, counsel for plaintiffs (or whoever else may obtain access to the hard drive after it leaves his possession) will, in effect, "own" Cooper's trade secrets in perpetuity. Similarly, the transmission of Cooper's confidential material via e-mail also places its trade secrets at risk of unauthorized disclosure. Because of the ease in sending an e-mail, Cooper's confidential materials could be inadvertently sent and/or forwarded to an unintended recipient. Cooper's production of responsive confidential

c. does not restrict access to Cooper's confidential material to Cooper's competitors. If an employee of one of Cooper's competitors otherwise falls into one of the permitted disclosure categories, disclosure is allowed. This is clearly inadequate to protect Cooper's confidential material.

d. does not specify a timeframe in which challenges to claims of confidentiality must be made. A time limit for such objections prevents "sandbagging" objections to all Cooper's confidentiality designations on the eve of trial when Plaintiffs, Cooper, and the Court should be focused on trial preparations, not discovery issues.

e. does not provide any procedures for dealing with inadvertent disclosures. As the Protective Order presently stands, Cooper, upon learning of any inadvertent disclosure, would have to come to the Court for redress which will take time and could result in even more harm to Cooper, depending on how widespread the inadvertent disclosure is. Having a procedure in place to address inadvertent disclosures is essential to minimize the potential harm that could be caused by such an event.

f. only allows 72 hours after receipt of a deposition transcript to make confidentiality designations to such transcript. Deposition transcripts can be lengthy and in order to thoughtfully and appropriately make confidentiality designations, Cooper needs more than 72 hours. Typically, protective orders entered in Cooper cases allow at least 45

---

information on compact discs satisfied plaintiffs' need to use electronic review and presentation of Cooper's documents and eliminates the need for hard drive storage. The CD format allows counsel for plaintiffs to readily and efficiently access the confidential material for electronic use (such as a trial presentation) and to provide copies to "authorized persons" under Cooper's Proposed Order. In addition to this convenience, production of the confidential material on CD permits efficient accounting and return of Cooper's confidential material at the conclusion of the litigation. In order to address these concerns, Cooper includes Paragraph 9 in its Proposed Order, which eliminates the significant risks that occurs as a result of "permanent" storage and the possibility of inadvertent e-mail distribution.

days for Cooper to provide opposing counsel with its confidential designations of deposition testimony. There is no reason Plaintiffs need the designations within 72 hours. Plaintiffs will have full access and use of the deposition transcripts, subject to the Protective Order, in whatever timeframe Cooper has to make designations.

### III. CONCLUSION

20. The "sharing" Protective Order proposed by Plaintiffs and entered by the Court unnecessarily jeopardizes the security of Cooper's trade secrets and confidential commercial information for no added benefit to the *Idar* Plaintiffs (only their counsel), does not require the return of Cooper's trade secrets at the conclusion of this lawsuit, and fails to address other important aspects of discovery that are more appropriately addressed in Cooper's revised proposed protective order attached hereto as Exhibit A. Even though Cooper's standard proposed order has been recognized as appropriate by the vast majority of Federal courts nationwide, including Texas, Cooper is willing to address some of Plaintiffs' concerns in its revised proposed protective order, as long as Cooper's trade secrets receive sufficient protection as required under Texas law – protection that is not afforded by the Protective Order entered by the Court on November 11, 2010. Cooper thus respectfully requests that the Court schedule an oral hearing to reconsider the current Protective Order and that, following such hearing, the Court replace the November 11, 2010 Protective Order with Cooper's revised proposed protective order (Exhibit A).

DATED: November 22, 2010　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　JOHNSON, TRENT, WEST & TAYLOR, L.L.P.

　　　　　　　　　　　　　　　　　　　　By:　　*/s/ T. Christopher Trent*
　　　　　　　　　　　　　　　　　　　　　　　T. Christopher Trent
　　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 20209400
　　　　　　　　　　　　　　　　　　　　　　　S.D. Tex. No. 14244
　　　　　　　　　　　　　　　　　　　　　　　919 Milam, Suite 1700
　　　　　　　　　　　　　　　　　　　　　　　Houston, TX 77002
　　　　　　　　　　　　　　　　　　　　　　　(713) 222-2323 – Telephone
　　　　　　　　　　　　　　　　　　　　　　　(713) 222-2226 – Facsimile
　　　　　　　　　　　　　　　　　　　　　　　ctrent@johnsontrent.com

　　　　　　　　　　　　　　　　　　　　**ATTORNEY-IN-CHARGE FOR DEFENDANT
　　　　　　　　　　　　　　　　　　　　COOPER TIRE & RUBBER COMPANY**

Raphael C. Taylor
Texas Bar No. 00788514
S.D. Tex. No. 17278
Jon Paul Hoelscher
Texas Bar No. 24050771
S.D. Tex. No. 700124
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam, Suite 1700
Houston, TX 77002
(713) 222-2323 – Telephone
(713) 222-2226 – Facsimile
rtaylor@johnsontrent.com
jhoelscher@johnsontrent.com

**OF COUNSEL FOR DEFENDANT
COOPER TIRE & RUBBER COMPANY**

## CERTIFICATE OF CONFERENCE

　　　Plaintiffs' counsel was contacted regarding this motion and has stated that he is opposed to this motion.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Rafe C. Taylor*
　　　　　　　　　　　　　　　　　　　　　　Rafe C. Taylor

## CERTIFICATE OF SERVICE

I certify that on November 22, 2010, a true and correct copy of the foregoing document was served by ECF on all counsel of record, including:

William R. Edwards *Via ECF*
John Blaise Gsanger
THE EDWARDS LAW FIRM
Frost Bank Plaza
802 N. Carancahua Street, Suite 1400
Corpus Christi, Texas 78401-0023


                                          */s/ Rafe C. Taylor*
                                            Rafe C. Taylor

165501