| | | |
|---|---|---|
| GENEVIEVE IDAR, et al., Plaintiffs, | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 2:10-CV-00217 |
| | § | |
| COOPER TIRE AND RUBBER CO., Defendant. | § | JURY TRIAL REQUESTED |

## PLAINTIFFS' OPPOSITION TO STAY OF MARCH 1 ORDER AND REQUEST FOR MECHANISM TO ENSURE PROMPT COMPLIANCE WITH ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the Plaintiffs (referred to collectively as "the Idar family"), and file Plaintiffs' Opposition to Stay of March 1 Order and Request for Mechanism to Ensure Prompt Compliance with Order, and would show the Court as follows:

### I. Stay of the Order is Unwarranted Due to Cooper's Discovery Abuse and Delay

#### A. Repeated Frivolous Rehearing Motions Assert Incorrect Legal Standards

1. Cooper has repeatedly boycotted the discovery process by urging the same erroneous legal standards again and again on rehearing. First, Cooper repeatedly urged this Court to ignore binding Texas precedent concerning protective orders. *See ¶¶ 12-13, infra*. Now, Cooper is deploying the same delay tactic with an incorrect definition of what constitutes a similar tire for the purposes of discovery. Specifically, Cooper claims "'similar' tires are those manufactured only to the same Green Tire Specification, or a related specification that differs only in terms of sidewall treatment." *Doc. 61-1 ¶ 10.*

2. Cooper's definition of similar tires has been expressly rejected by numerous courts in the most unequivocal terms:

Next, we find that the motion court erroneously limited the scope of disclosure to tires with the "same green tire specification" as the tire in question. … [W]e reject the claim … that "from an engineering and technical standpoint" similar tires are those manufactured to the same green tire specifications and that only those tires manufactured to the same green tire specifications … In effect, … to limit disclosure to tires with same green tire specification limits disclosure to identical tires. Yet, there is simply no evidence in the record, nor any rationale, that suggests that tread separation is limited to either one or a range of green tire specifications. ***Tread separation problems may be present in tires other than those sharing the same green tire specifications, and thus the scope of discovery in this case should include documents relating generally to the tread separation defect or problem.*** … ***[T]o limit disclosure to "same green tire specifications" rather than to tires with the same defect of tread separation is an "absurdity" since Cooper Tire will be able to conceal documents probative on the issues of notice, defectiveness and dangerousness.*** For the same reasons, it would be absurd to limit disclosure to the same plant as the one where the subject tire was manufactured.

*Mann ex. rel. Akst v. Cooper Tire Co.*, 33 A.D.3d 24, 34-35, 816 N.Y.S.2d 45 (N.Y. App. Div. 2006) (emphasis added); *see also Alvarez v. Cooper Tire & Rubber C*o., No. 4D08-3498, 2010 WL 4861514, at *8 (Fla. 4th DCA Dec. 1, 2010) (ordering a new trial on appeal because the scope of discovery should have been "larger than the admissibility of trial evidence," so "***the court unreasonably constricted [discovery] to the single model tire involved in this case***, which is even narrower than [the] standard for evidence at trial. As all the above courts have concluded, the general nature of passenger-light truck tire production is standard for all models. Records of tread separation in any of them may lead to admissible evidence at trial in this case. For the same reasons, it is obvious that the discovery sought is especially relevant to Cooper Tire's 'state-of-the-art' defense.") (emphasis added); *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1183, 1191-92 (10th Cir.2009) (rejecting Cooper's argument that discovery should be limited "to the design of

the Green Tire Specification ['GTS'] at issue" and holding that **when "the plaintiffs' theory of the case includes the argument that Cooper was on notice of the tread separation problem," the scope of discovery properly included "information on tires manufactured to specifications other than GTS" for the particular tire that failed**, citing Fed. R. Civ. P. 26(b)(1)) (emphasis added); *Cooper Tire & Rubber Co. v. Rodriguez*, 2 So.3d 1027, 1029-31 (Fla. 3d DCA 2009) ("The manufacturing techniques and procedures employed to construct the Cobra model radial tires involved in the plaintiff's accident are not unique to the tires manufactured to the same GTS. **Therefore … discovery of documents related to Cooper tires other than those manufactured to the same GTS" is proper**) (emphasis added); *Ex parte Cooper Tire & Rubber Co.*, 987 So.2d 1090, 1103 (Ala. 2007) (holding that "the manufacture of the tires was to a large extent standardized and that the particular design and manufacturing process was substantially the same, regardless of a particular model. Thus, **the discovery in this case is directed toward detailing the instances in which Cooper's design and manufacturing process has resulted in tires that failed as a result of tread separation, regardless of the particular size or tread pattern of the tire**"); *Petersen v. Cooper Tire & Rubber Co.*, No. 1:06-cv-00108-TC-PMW, 2007 WL 2391151, at *3 (D.Utah 2007) ("limiting discovery in the fashion Cooper proposes would be premature and could potentially deprive Plaintiffs of discovery supporting that theory" of liability in the complaint).

3.     Back in October of last year, the parties expressly briefed the issue that "in the Fifth Circuit, 'substantially similar' as a 'predicate for the proof of similar accidents is defined ... by the defect ... at issue.' *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d

1070, 1083 (5th Cir. 1986)." *Doc. No. 33¶ 10* (also citing *In re ExMark Mfg. Co.*, 299 S.W.3d 519, 529 (Tex. App.-Corpus Christi 2009, orig. proceeding), which cited, *inter alia*, both *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009), and *Mann ex rel. Akst v. Cooper Tire Co.*, 33 A.D.3d 24, 816 N.Y.S.2d 45, 55 (2006)).  The law has not changed since last October, and it is still true in the Fifth Circuit that substantial similarity is defined by the product defect and not by the design specification number as Cooper contends. *See, e.g., Green v. Schutt Sports Mfg. Co.*, 369 Fed. Appx. 630, 638 (5th Cir. 2010) (citing *Jackson* for the holding that "substantial similarity does not require an exact match" and courts should not "impose an overly 'narrow and unrealistic' view of relevance"); *see also In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation*, NO. 3:07-CV-00101, 3:07-CV-00102, 3:07-CV-00130, 4:08-MD-2004, 2010 WL 2196632 (M.D. Ga. 2010) (citing *Jackson* for the "finding that trial court improperly excluded evidence of all accidents except those involving precise two components involved in plaintiff's case, where disputed danger was mismatch of all multi-piece parts, not just parts at issue in plaintiff's case").

4.      A witness cannot offer testimony on an issue where the law must be applied to the facts unless the witness's testimony is "based on proper legal concepts." *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 365 (Tex.1987); *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 353 (Tex. App. Dallas 2004, pet. denied).  In this matter, the evidence Cooper offered to meet its burden of proof is based on an improper legal concept, and the Idar family objects to the Brinkman affidavit on this ground.

## B. Cooper's Conclusory Assertions of False Privileges

5.      Cooper's privilege log and Brinkman's affidavits are conclusory and fail to make a particularized showing to establish a specific privilege applicable to a particular document. *See Ex. 1; Doc. No. 61-1;28-2.* A "conclusory opinion that information is a trade secret or is not used industry-wide, or a party's mere desire to avoid disclosing information to others," fails to prove the alleged privilege because such an overbroad misinterpretation of trade secrecy would "allow the privilege to extend to almost any internal company records." *In re Lowe's Co., Inc.*, 134 S.W.3d 876, 879 (Tex. App. Houston [14th Dist .] 2004, orig. proceeding); *see also Plas-Tex, Inc. v. Jones*, No. 03-99-00286-CV, 2000 WL 632677, at *5 (Tex. App. - Austin May 18, 2000, pet. denied) (conclusory statements regarding unidentified trade secrets with no facts to support the statements are not competent proof); *TXO Prod. Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137, 141 n. 4 (Tex. App.- Houston [14th Dist.] 1999, pet. denied) (simply making the conclusory determination that information is a trade secret fails to establish the alleged trade secret); *Humphreys v. Caldwell*, 881 S.W.2d 940, 946 (Tex. App. -Corpus Christi 1994, orig. proceeding), overruled on other grounds, 888 S.W.2d 469 (Tex. 1994) ("With regard to the allegation of trade secrets ... [defendant's] affidavit is likewise conclusory and wholly fails to provide any evidence to support his claim of privilege."). Bare conclusions are incompetent as evidence, and to avoid being conclusory, the witness "must explain the basis of his statements to link conclusions to facts." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Coastal Transp. Co. v. Crown*

*Cent. Petrol.*, 136 S.W.3d 227, 232 (Tex. 2004). The Idar family objects to the Brinkman affidavits and Cooper's privilege log as conclusory.

6. The simplest and most straight forward method to avoid conclusory assertions of trade secrecy is to tender the disputed documents for *in camera* inspection by the court. "Generally, a trial court conducts an *in camera* inspection to determine if a document is in fact privileged." *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 223 (Tex. 2004). In this case, Cooper has refused to submit the documents at issue for an *in camera* inspection. Even more tellingly, the Plaintiffs' counsel and Intervenors' counsel and the Idar family's experts all have possession of the overwhelming majority of documents and testimony at issue from other cases, and yet Cooper has refused the Idar family's request to submit the documents at issue for *in camera* inspection. *See Ex. 2.* Reviewing the documents and testimony at issue would refute Cooper's trade secrecy allegations.

7. Yet Cooper's claims of trade secrecy are worse than merely conclusory. In the few instances where Cooper bothered to identify a specific document and assert a trade secrecy privilege in connection with that document, Cooper's privilege claims are demonstrably false and cannot have been asserted in good faith as the Protective Order expressly requires. *See Doc. No. 35 ¶2 (a)* (expressly requiring good faith). In their Complaint, the Idar family expressly pleaded that "Cooper has possession of documents, testimony, and information that confirm Cooper made the Cooper Trendsetter despite knowledge that a major automotive manufacturer had assessed Cooper's tire technology and concluded it was lagging behind the tires made by Cooper's competitors." *Doc. No.*

23 ¶ 93.  In its Answer, Cooper specifically denied this allegation.  *Doc. No. 26 ¶ 93.*

Cooper's response to the discovery at issue included Cooper's promise that it would

produce a General Motors "memorandum dated February 18, 1998 from the GM Tire-

Wheel System Assessment Team," but only after this Court's Protective Order was

replaced with an "appropriate protective order that adequately protects Cooper's" trade

secrets.[1]  *See Ex. 3 p. 9.*  Similarly, one of the few specific documents identified on

Cooper's privilege log is the GM memorandum dated February 18, 1998, and Cooper

expressly asserts a trade secret privilege over this document.  *Ex. 1 p. 4.*  Cooper's

assertion that it has a trade secret right in the February 18, 1998 General Motors memo is

demonstrably false for several reasons.  First, the document is a General Motors memo,

not a Cooper memo, so if there was a trade secret (and there is not a trade secret privilege

as shown by Exhibit 5), the trade secret would belong to General Motors and not Cooper:



North American Operations
Engineering Center

Date:        18 February, 1998

Subject:    Potential Supplier Assessment of Cooper Tire & Rubber Co.

From:       Tire-Wheel System Assessment Team

To:          R. E. Socia - World Wide Purchasing

A team including Tire-Wheel Systems and World Wide Purchasing representatives traveled to
Cooper Tire and Rubber Company's Findlay, OH headquarters and their Albany, GA tire
production facility the week of January 26, to perform a potential supplier assessment.  Cooper
was advised in December, 1997 of the areas that the team would cover – Leadership,
Technology, Manufacturing, and Quality.

---

[1] As discussed in paragraphs 12 and 13, below, Cooper's argument that the current protective
order is not "appropriate" is patently incorrect.

*Ex. 4.*  Second, the memo demonstrates that Cooper's "overall technical capability is very limited" and Cooper's tire plants "lack both the tools and the personnel to" make tires "with the quality … required by General Motors":

> The following points summarize the Team's overall assessment.
>
> - Research and Development has a few capabilities that are contemporary with the rest of the tire industry; however, overall technical capability is very limited. Significant testing, analysis, and modeling capability would have to be installed to meet current OE tire performance requirements and competitive performance levels.
> - Cooper's manufacturing capability, while contemporary, lags the current OE industry level of automation, control, precision and efficiency.
> - Cooper's quality philosophy is dated significantly, relying on repeated inspections and repair much more heavily than root cause analysis, corrective action and continuous improvement.
>
> Cooper's declared current position is to be a "fast follower" in the aftermarket. This has resulted in the need for minimal investment in technology in the areas of design, modeling, test and analysis. Therefore they lack both the tools and the personnel to compete in the OE market. Their manufacturing and process technology has been similarly structured, and thus needs similar upgrades to produce original equipment tires with the quality and uniformity levels required by General Motors.

*Id.*  A trade secret is confidential business information that "presents an opportunity to obtain an advantage over competitors who do not know or use it" so General Motors' candid assessment that Cooper makes poorer quality tires and lags behind other tire manufactures does not qualify as a trade secret.  *Compare CQ, Inc. v. TXU Mining Co*., 565 F.3d 268, 274 (5th Cir. 2009) *and Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 267 (5th Cir. 2007) *with Ex. 4*.  Most importantly, Cooper is claiming a trade secret privilege over documents which Cooper previously agreed are "no longer confidential":

> An agreement has been reached between Plaintiff's Liaison Counsel and Cooper Liaison Counsel that certain exhibits to the deposition of Richard D. Stephens taken in the JCCP on January 27, 2004, are no longer confidential under the terms of the JCCP Protective Order. The items that are the subject of this agreement are:
>
> Ex. 2: Feb. 18, 1998 GM Memo (Bates No. JCCP - 4292-0021126).
>
> Ex. 3: Jan. 10, 1998 Memo by Dick Stephens re GM technical assessment. (Bates No. JCCP 4292 - 0004047 - 50).

*Ex. 5.*[2] Cooper's assertion of a trade secret privilege over a document which it previously admitted was not a trade secret violates the good faith standards set in the Protective Order. *See Doc. No. ¶¶ 1(a), 2(a).*

8.     Moreover, the juxtaposition of Brinkman's affidavits with Cooper's false assertion of a privilege over the GM memo demonstrates the wholly conclusory nature of Brinkman's affidavits.  Cooper clearly offered Brinkman's affidavits as its only proof of its alleged privilege over the GM memo, and if Brinkman intended for his affidavits to establish a privilege over the GM memo, then Brinkman has clearly signed false affidavits.  If, on the other hand, Brinkman did not intend for his affidavits to encompass the GM memo, then this unspoken reservation within the affidavits demonstrates how the affidavits cannot be used to establish a specific privilege over any particular document. In addition, the existence of the GM memo demonstrates that paragraph 93 of Cooper's Answer was false, and Cooper's Answer was signed in violation of Rule 11.  Fed. R. Civ. P. 11.

---

[2] It is noteworthy that, while Cooper has offered to produce the non-confidential February 18 General Motors memo subject to a protective order, Cooper conspicuously refused to disclose the existence of the non-confidential January 10, 1998, memo on the same topic by Cooper vice-principal Dick Stephens.  *See 5.*

## C. Cooper's Continuing Discovery Abuse

9.      Cooper's bogus assertion of inapplicable privileges is improper, and it is typical of Cooper's pattern of discovery abuse in this case.[3]   Cooper's assertions of clearly inapplicable privileges and its hide-the-ball gamesmanship are an abuse of the discovery process.  As a clear indication of Cooper's discovery abuse, the Idar family has uncovered more documents about Cooper's cut-rate tire designs and more eyewitnesses to Cooper's shoddy manufacturing practices through independent research than through the discovery process.  Exhibits 4 through 9 to this motion were uncovered by the Idar family's independent investigation and not produced by Cooper in this case despite the fact that these Exhibits all contain information within the scope of the pending discovery requests.  *See Ex. 4-9; see also Doc. No. 11 ¶¶ 5-7* (outlining more evidence and witnesses found by the Idar family's investigation and not revealed by Cooper in this case).

---

[3] This is not an isolated incident where Cooper is asserting a trade secret privilege over documents which have been determined to be non-confidential.  For example, Cooper has also refused to produce Tire Durability Meeting documents, *Ex.6*, the internal correspondence about safer alternative tire designs, *Ex. 7*, and facts disclosed in non-confidential testimony from *Bradley v. Cooper Tire & Rubber Co.*, Civil No. 4:03CV00094-DPJ (S.D. Miss), *Ex. 8*.  The Idar family's requests encompass these materials, which have all been determined to be non-confidential.  *See Bradley v. Cooper Tire & Rubber Co.*, Civil No. 4:03CV00094-DPJ (S.D. Miss Doc. No. 547 Jan. 7, 2008) ("What remains in the unredacted portions of Exhibits P1106 and P1107 does not appear to qualify for trade secret status… Cooper Tire seeks to seal the transcribed testimony of Plaintiffs' expert Dennis Carlson regarding … the lack of nylon overlays and wedges in the subject tire and … [t]he Court finds that the objected-to testimony does not constitute trade secrets and that Defendant has failed to demonstrate that its competitors can "obtain economic value from its disclosure or use.").  Likewise, Cooper has asserted trade secrecy over information it has produced in other cases without claiming confidentiality, *compare Ex. 1 p. 2 with Ex. 9*, and claimed trade secrecy in connection with tire design features which are disclosed in Cooper's marketing literature, disclosed on the sidewalls of many tires, and disclosed in tire industry publications.  *See Ex. 10, Ex. 11, Ex. 12; see also* 49 CFR 571.109 S4.3(d), (e).

10.    Similarly, Cooper has falsely asserted trade secret and unspecified privacy privileges as grounds to refused to disclose the identity of its employees and ex-employees who eyewitnessed the conditions and practices at Cooper's Tupelo tire plant and Regional Inspection Points.   The relevance of such eyewitnesses testimony has already been briefed in this case and so the Idar family will not belabor the issue here. *See Doc. No. 11 ¶ 7; see also Coleman v. Cooper Tire & Rubber Co.*, No. CIVA CV202-036, 2003 WL 25152299, at *1-2 (S.D. Ga. Feb. 7, 2003) (holding that Cooper employee testimony about poor manufacturing conditions at the Tupelo tire plant were the tire at issue was made will support a claim for punitive damages); *Reyes v. Cooper Tire & Rubber Co.*, Civil Action No. 09-3680-SRD-SS, 2010 WL 2541616 (E.D. La. Jun 16, 2010) (denying Cooper's motion to quash former tire plant employee depositions). When a discovery request seeks identification of employees who have knowledge of the issues raised in the pleadings, the identity of those witnesses must be disclosed. *See, e.g., Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 555 (Tex.1990); *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139, 150 (Tex. App.-Fort Worth 2002, orig. proceeding); *see also Vickers v. General Motors Corp.*, No. 07-2172 MI/P, 2008 WL 4600997, *3 (W.D. Tenn. Sept. 29, 2008) (in a product liability case, the scope of discovery properly includes "employees' names, addresses, and telephone numbers if known, and a general description of the roles these employees played" in producing the product).   A "party cannot shield its employees who have knowledge of facts relevant to a case from the discovery process" because when "employees obtain factual information relevant to a case simply by virtue of their employment as employees, … that information is

discoverable." *In re Bell Helicopter Textron*, 87 S.W.3d at 150 (citing *Axelson*, 798 S.W.2d at 555 ("An employee who was employed in an area that becomes the subject of litigation can never qualify as a consulting-only expert because the employment was not in anticipation of litigation.")). Similarly, Cooper's assertion of privacy interests as grounds for refusing to identify eyewitnesses to the manufacturing conditions at issue is preposterous because such an amorphous privilege would preclude the identification of state troopers investigating a crash, emergency medical services personnel responding to the crash, treating physicians, and virtually all other eyewitnesses. Cooper's refusal to identify witnesses based on inapplicable and non-existent privileges is grossly improper.

11.     Just as Cooper has alleged privileges without a good faith basis (in violation of paragraphs 1(a) and 2(a) of the Protective Order, *Doc. No. 35*), Cooper has also asserted numerous groundless objections. For example, Cooper objected dozens of times that the discovery requests were "nothing more than a 'fishing expedition.'" *Ex. 3*. This objection is meritless in light of the fact that the Idar family's experts already have possession of the *Toe* and *Petersen* discovery requested. *See Ex. 13*. Cooper has refused to withdraw this objection even after the Idar family called Cooper's attention to the fact that the objection was improper:

> With respect to my requests for documents produced in the *Toe* case, you repeatedly respond that my requests are a "fishing expedition." Please recall that I'm appellate counsel in the *Toe* case so my requests cannot be a fishing expedition because I already have those fish in my possession. Please also recall from the initial hearing in this case that the judge asked you to produce the documents which are already in my possession from other cases. You know what the *Toe* documents show, I know what those documents show, your client and its corporate representatives know what those documents show, and both of our experts know what those documents

show; please reconsider whether you really want me to file a motion to compel with respect to the *Toe* discovery.

*Ex. 14.* The Idar family's experts already know the contents of the *Toe* and *Petersen* documents, and they already know that those documents support the claims asserted in this civil action. *See Ex. 13.* Moreover, Cooper has filed a pleading where it has expressly admitted that the documents in the possession of the Idar family's counsel from prior litigation are documents which correspond to the allegations in the Idar family's Complaint:

> Most of the documents characterized in paragraphs 90-160 of Plaintiffs' Original Complaint appear to have been produced to Plaintiffs' counsel in one or more cases, including the Iowa state court case of *Toe v. Cooper.*

*Doc. No. 8 p. 3 n. 2.*[4] Clearly, if Cooper admits that the allegations in the Complaint (which track with the discovery at issue) correspond to documents which Cooper has produced in prior litigation, then these discovery requests cannot be a "fishing expedition." Instead, by Cooper's own acknowledgement, the Idar family is merely seeking to compel Cooper to produce the documents which correspond to the allegations in their Complaint and which their counsel or experts have already reviewed.

12. As another example of Cooper's groundless objections, Cooper has objected dozens of times that it will only produce certain information after the "entry of an appropriate protective order." *Ex. 3.* Cooper asserted this objection on January 28, which was more than two months after this Court entered an appropriate protective order

---

[4] While it is helpful in the discovery context that Cooper admits it has previously produced to the Idar family's counsel internal documents which correspond with the allegations in paragraphs 90-160 of the Complaint, the Idar family went to great lengths to establish that they had non-confidential sources for all of their allegations. *See Doc. No. 11.*

and more than a month after this Court overruled Cooper's motion for reconsideration of the protective order. *See Doc. No 35, Doc. No. 39.* Cooper has refused to withdraw this erroneous objection even after the Idar family has expressly pointed out this was not a proper objection:

> With respect to your discovery responses, you have had my requests for this discovery since August of last year, and so I was surprised that you did not produce any documents or answer even one of the interrogatories. I am asking you to reconsider some of your responses in advance of my motion to compel. For example, several of your answers recite that you will provide some of the discovery requested "upon the entry of an appropriate protective order." ***After extensive briefing by both sides, the judge entered a protective order on November 11 of last year, and you filed a motion for reconsideration on November 22, which the judge overruled on December 15. I think you are making a mistake by withholding discovery responses until "the entry of an appropriate protective order" – that sounds like you are willfully disregarding the fact that the judge has already entered a protective order.***

*Ex. 14* (emphasis added, paragraph break omitted). Notwithstanding this Court's order overruling Cooper's **second** motion for reconsideration of the protective order, *Doc. No. 45*, Cooper still refuses to produce the confidential information it promised to produce after the entry of a protective order. *Ex. 15.*

13.     In this context, it bears notice that Cooper filed its **second** motion for reconsideration **after** the Idar family specifically warned Cooper of the groundlessness of its proposed second motion for reconsideration:

> You seem to have some doubt about the continuing validity of Garcia v. Peeples in light of In re Continental, but you must be aware that the Texas Supreme Court does not share your doubt.
> The Texas Supreme Court cited Garcia v. Peeples as recently as 2009 without any indication that the decision had been abrogated or overruled. See In re Collins, 286 S.W.3d 911, 919 (Tex. 2009). Likewise, the Texas Supreme Court relied upon Garcia v. Peeples again in 2006. See In re Ford

Motor Co., 211 S.W.3d 295, 299-300 (Tex. 2006). In fact, if you will re-read In re Continental General Tire, Inc., 979 S.W.2d 609 (Tex. 1998), you will see that the opinion expressly cites Garcia v. Peeples without limiting or overruling or abrogating that decision. Id. at 613. In fact, since the Texas Supreme Court's decision from the In re Continental General Tire case, Garcia v. Peeples has been cited at least 23 times, and not one of those 23 opinions suggests that Garcia v. Peeples has been abrogated or overruled by In re Continental.

…

Do I understand correctly that you are intending to file a second motion for reconsideration on grounds that someone has filed a petition for mandamus (which was denied by the Dallas Court of Appeals) challenging Garcia v. Peeples?

I presume we agree if the Quality Safety Systems mandamus "asks the Supreme Court to **overrule Garcia**," and the court has not ruled on that mandamus petition, then Garcia is currently the law of Texas, right?

Are you going to ask Judge Jack to disregard the Texas Supreme Court authorities merely because someone has filed petition asking for those authorities to be overruled? The Texas Supreme Court grants relief in only a tiny fraction of cases and a judge cannot keep reconsidering and reconsidering an issue just because someone has filed an appeal or a mandamus petition in the hope of changing the current law.

*Ex. 16.*[5] This Court has already noted that "the Protective Order is appropriate to protect Defendant's interests and that it serves the interests of the parties and the interests of justice.," *Doc. No. 45*, and this view is widely shared:

> Protective orders may, of course, authorize disclosure of confidential documents to counsel in other related cases … [because] discovery already completed should ordinarily be made available to litigants in the other cases.

---

[5] The idea that a court should ignore governing precedent because a party in some other case has filed a petition for writ of mandamus is preposterous. Historically, the Texas Supreme Court has granted less than ten percent of petitions for mandamus relief. *Baron, Pamela*, "Texas Supreme Court Docket Analysis," State Bar of Texas 24th Ann. Adv. Civ. Appellate Prac. Course (Sep. 2010). Moreover, a request from the court for responsive briefing is meaningless insofar as such briefing is ordered upon the vote of a single justice on the nine-judge court. *Drummond, Dylan, Hobbs, Lisa*, "In Defense of Confidential Votes on Petitions for Review at the Texas Supreme Court," *Appellate Advocate* (Fall 2010).

*Manual for Complex Litigation* § 21.431, at 53 n. 61 and § 31.13, at 258 (2d 1985); *see also* Miller, Arthur, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 497 (1991) ("It is difficult and indeed unwise to have an absolute prohibition on discovery sharing, given the extraordinary high cost of litigation and the reality that discovery accounts for the largest component of that expenses in many cases. Barring sharing smacks too much of requiring each litigant to reinvent the wheel and not surprisingly it has been rejected on that basis by some courts. As Judge Wisdom has put it, there "is no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another," citations omitted); *Proceedings of the 51st Judicial Conference of the District of Columbia*, 134 F.R.D. 321, 389-90 (1991) ("The reason [the proliferation of secrecy orders] is such a terrible problem is several-fold. First, the immediate effect that it has on the judicial system is that everybody who represents the plaintiffs has to reinvent the wheel. The defendants know this. That is why they ask for it .... But a far more egregious effect – talk about just, speedy and inexpensive determination of justice – is judges have to, over and over and over again, resolve the same discovery disputes in courts throughout the country."); *Deford v. Schmid Products Co.*, 120 F.R.D. 648, 654 (D. Md. 1987) ("The plaintiffs' primary argument in favor of disclosure is their desire to share information with other litigants and counsel. This is an appropriate goal under the Federal Rules of Civil Procedure, which are intended 'to secure the just, speedy, and inexpensive determination of every action.' Sharing discovery materials may be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs against a national manufacturer of a consumer

product."); *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982) (discovery sharing "reduces the effort and expense inflicted on all parties, including [the defendant], by repetitive and unnecessary discovery" and such "means of minimizing discovery costs improves the accessibility and economy of justice" and "[e]ach plaintiff should not have to undertake to discovery anew the basic evidence that other plaintiffs have uncovered" which "would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel" when "justice requires that courts encourage, not hamstring, information exchanges such as that here involved"); *U.S. v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (E.D. N.Y. 1981) ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purpose of the Federal Rules of Civil Procedure. Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources."); *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980) ("Such collaboration among plaintiffs' attorneys would come squarely within the aims of the Federal Rules of Civil Procedure – to secure the just, speedy and inexpensive determination of every action . . . there is nothing inherently culpable about sharing information obtained through discovery. The availability of the discovery information may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy and efficient representation."); *Wilk v. AMA*, 635 F.2d 1295, 1299-1301 (7th Cir.1980) (noting the "wastefulness" of duplicate discovery, and agreeing with "every other appellate court which has considered the issue" that modification of

existing protective orders to permit access by other litigations should be permitted because "when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process"); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 87 (D.N.J. 1986), *mandamus denied*, 822 F. 2d 335 (3d Cir. 1987*), cert denied*, 484 U.S. 976 (1987) ("requiring each plaintiff in every similar action to run the same gauntlet over and over again serves no useful purpose other than to create barriers and discourage litigation").

14.    Cooper's objections to the discovery also affirmatively misstate the facts and circumstances of the delays in the discovery process.   For example, Cooper's discovery objections state that Cooper delayed producing documents because it has been waiting for the Idar family to accept or decline Cooper's offer to produce a fraction of the discovery requested under a more restrictive protective order than the Court's order.  *Ex. 3 p. 7.*  This is a false excuse for delay because Cooper's offer was clearly rejected back in September.  *See Ex. 17.*  Significantly, Cooper has not withdrawn this objection even after the Idar family reminded Cooper that its objection was false:

> Your responses also state that you have offered the *Toe* and *Petersen* documents dated from July 7, 2000 to the present, and further represent that I "have not accepted or declined the offer."  Please recall my email of September 17 of last year:
>> Here is my concern:  we both heard the judge say that she didn't want to hear any discovery disputes about me having to fight for documents that I already have possession of in other cases.  I was thinking, therefore, that you were going to give me all of the *Toe* discovery. Instead, you are offering to "review the requests you have made relating to the Cooper documents from the *Toe* case and provide Cooper's business documents produced in that matter that are dated

beginning on July 7, 2000 and up to the present." We both know … it is not consistent with the judge's expressed intention, and it is not … acceptable because it deliberately omits numerous documents which are within the scope of the conduct which I have expressly complained about in the complaint.

You were counsel in the *Trenado* case so you know the *Toe* documents which you are NOT agreeing to produce were ADMITTED INTO EVIDENCE in the *Trenado* case (and the *Toe* case). Judge Jack will decide whether or not those documents are admissible in the *Idar* case, and I'm not asking you for a pre-trial agreement to the admissibility of these documents, but if those documents were ADMISSIBLE in *Trenado* and *Toe*, there should be no good faith dispute that they are at least DISCOVERABLE in *Idar*.

Cooper's knowledge of the danger posed by its tires and its knowledge of safer alternative designs predates July 7, 2000. You know that, I know that, and – if you read the order denying your motion to strike – the judge also knows that.

I would like your initial disclosure to include the *Toe* discovery without the July 7, 2000 cutoff date.

With respect to the *Petersen* discovery, I have the same objection to the July 7, 2000 cutoff date. Also, I would like access to the *Talalia* repository – not just access to *Petersen* documents from the repository.

*Ex. 14.* Cooper's attempt to blame its own deliberate delay of the discovery process on a false claim that the Idar family has "not accepted or declined" an offer to truncate the Idar family's right to discovery is abusive.

15. Cooper's pattern of filing misleading court papers and its prosecution of endless rehearing on frivolous grounds with the apparent goal of delay remains ongoing through its proposed mandamus and request to stay discovery. For example, Cooper apparently plans to seek mandamus review of the Court's orders, but Cooper has not responded to the Idar family's questions about how Cooper can make a good faith claim of any harm as a result of the Court's orders and why Cooper persists in refusing to produce non-confidential information:

I'm not sure how you have a good faith argument that this protective order will harm your client. The order is nearly identical to the Ford-Firestone order, and Firestone was never harmed by the order. Likewise, Cooper has resisted the efforts to dissolve the consolidated Cooper tire litigation in California, and that protective order also allows sharing among those who have a Cooper tire detread case in the consolidated litigation and that includes many different brand names of tires, and different sizes of tires, and tires made at different plants. Obviously, the protective order in the Cooper consolidated action in California has not harmed Cooper, and so Judge Jack's protective order cannot possibly harm Cooper. Likewise, Cooper called me less than a year ago in a certificate of conference call to discuss Cooper's plan to seek consolidated litigation of the Cooper detread cases in Texas. Obviously, such consolidated litigation would require a protective order even broader than the order entered by Judge Jack. If such a protective order would harm Cooper, why was Cooper proposing a Texas consolidation less than a year ago?

Moreover, if you are planning on filing a petition for writ of mandamus on the sharing provision in the protective order, that does not grant any excuse for delaying production of the non-confidential matters. The identities of employees and ex-employees are not trade secrets, lists of tires sold in different sizes and brand names and whether or not you would find nylon reinforcement of the belt if you cut the tire open are not trade secrets, documents which Cooper has previously agreed are not confidential and which Cooper has used in open court are not trade secrets, etc. Still, you are withholding this information, too, and it does not even arguably qualify as a trade secret.

*Ex. 18.* Cooper has refused to answer how the Protective Order in this case is more "harmful" that the protective orders in the Cooper litigation consolidated in California or the Ford-Firestone litigation consolidated in Texas. *Compare Doc. No.35 with Doc. No. 31-2 and Ex. 19.* Moreover, if *Garcia v. Peeples* must be overturned on grounds that protective orders must forbid similarly situated litigants from sharing discovery, then the federal and Texas state rules on consolidated and multi-district litigation would also need to be overturned. *Cf.* 28 U.S.C.A. § 1407; Tex. R. Jud. Admin. 13. Obviously, Cooper does not believe protective orders must forbid similarly situated litigants from sharing

discovery because Cooper has resisted efforts to dissolve the consolidated litigation in California and has proposed a similar consolidation of litigation in Texas. *Ex. 13.*

16.    Cooper's motion to stay discovery is also misleading because it states that Cooper had "less than 5 hours notice to appear for" the February 28 telephone conference. *Doc. No. 62 ¶ 2.* On February 17, when it became apparent that Cooper was not going to produce any discovery despite this Court's order overruling Cooper's ***second*** motion for reconsideration and overruling its ***first*** motion to stay discovery, the Idar family mentioned that it would need to seek Court intervention if Cooper did not produce any discovery:

> Now that the judge has overruled your second motion for reconsideration and request to stay discovery, can you please tell me when I can expect to receive the discovery I have been requesting for many months now?
> I would prefer not to burden the court by seeking her intervention when her intentions with respect to the discovery in this case have been made very clear, but I have been waiting for a very long time and still I do not have even one interrogatory response or even one document produced in response to the requests for production.
> Please let me know.

*Ex. 20.* On February 23, the Idar family asked Cooper "do I have Cooper's permission to tender Toe or Petersen documents to the court for her in camera review in connection with my discovery motion in Idar?" *Ex 21.* On February 24, the Idar family discussed the telephone conference with Cooper:

> My expert deadline is approaching and I still do not have any meaningful discovery from Cooper, and so I will need to file a motion to compel answers to the interrogatories and request for production I served back in November. I understood from Rafe that I was to (finally) receive some discovery from Cooper yesterday, but that discovery never came.
> Judge Jack prefers that the court and the parties have a telephone conference in advance of any discovery motions.

Can we have that conference this afternoon or does Monday work better for everyone?

*Ex. 22.* Cooper expressly asked that we request the telephone conference on Monday, February 28 at 11:00 a.m, and so the telephone conference was set at that specific date and time at Cooper's request. *Ex. 22.* Contrary to Cooper's claim that it had "less than 5 hours notice" of the February 28 telephone conference, Cooper had four days notice and the conference was set on a date and time of Cooper's choosing.

17.    Cooper's motion to stay discovery is similarly misleading in its suggestion that "Plaintiffs had not filed anything placing any of the objections at issue." *Doc. No. 62 ¶ 2.* Cooper is aware that the Idar family provided the Court and all parties with copies of the attached Exhibit 1, Exhibit 3, Exhibit 4, Exhibit 5, Exhibit 6, Exhibit 7, and Exhibit 10 pursuant to this Court's General Order, and while these Exhibits were not "filed" accordingly to the General Order, they were delivered in advance of the telephone conference.  Significantly, these Exhibits are sufficient to establish that Cooper was grossly abusing the discovery process, had asserted fictional privileges and objections, and had violated Rule 13.  Moreover, during the telephonic hearing, the Idar family called the Court's attention to Cooper's previously filed pleading which admitted that Cooper has documents which correspond to the allegations in paragraphs 90 though 160 of the Idar family's Complaint. *See Doc. No. 8 p. 3 n. 2.* Many of the allegations in paragraphs 90 through 160 are allegations where the corresponding documents could not possibly amount to a trade secret because the allegations do not entail Cooper's confidential information which provides Cooper a business advantage over its

competitors in the tire industry.[6]  When some potentially privileged information is combined with non-privileged information, "the party seeking protection must segregate and produce to the court the materials it seeks to protect from disclosure" or else the party must produce both the privileged and non-privileged information.  *In re CI Host, Inc.*, 92 S.W.3d 514 (Tex. 2002).  In this case, Cooper chose to produce nothing rather than trying to segregate potentially privileged information from non-privileged information.

18.     Cooper's motion to stay discovery further misleads with respect to its claim that "Plaintiffs did not meet their burden under Texas Rule of Evidence 507 of demonstrating that to show that the trade secret information they are requesting is necessary for a fair adjudication of their claim."  *Doc. No. 62 ¶ 3* (*citing In re Continental Gen. Tire, Inc.*, 979 S.W.2d 609, 610-11 (Tex. 1998)).  This argument is both legally and factually erroneous.  First, under *In re Continental*, the party seeking discovery does not have any burden until after the party resisting discovery proves its trade secret.  The telephonic hearing established that Cooper's privilege claims and its privilege log were incomplete, insufficiently detailed, and untrue in their assertions.  Brinkman's recent affidavit does nothing to advance the still unmet goal of proving any trade secrets.  *See ¶¶ 1-8, supra.*  Second, although the Idar family had no burden to

---

[6] *See, e.g., Doc. No. 23 ¶¶ 93* (GM's poor evaluation of Cooper cannot qualify as Cooper's trade secret), *129-30* (chronically unrepaired roof leaks that allow rainwater to drip on tire building machines cannot qualify as a trade secret), *135* (selling repaired tires as if they had not been repaired cannot be a trade secret), *136* (implementing lax quality inspections cannot be a trade secret), *137* (falsifying quality control results cannot qualify as a trade secret), *138* (creating a false impression of workmanship cannot qualify as a trade secret), *139* (allocating insufficient time to conduct quality control inspections cannot qualify as a trade secret), *144* (failing to scrap out-of-specification tires cannot qualify as a trade secret), *145* (failing to accurately measure the chemical ingredients when making rubber cannot qualify as a trade secret).

prove necessity because Cooper never proved its alleged privileges, the record before the Court clearly established that the discovery at issue is necessary for a fair adjudication of the Idar family's claims. Specifically, the record before the Court establishes:

- The discovery at issue tracks the allegations in the Complaint, *compare Doc. No. 23 with Ex. 3;*

- Cooper admitted "most of the documents characterized in paragraphs 90-160 of Plaintiffs' Original Complaint appear to have been produced to Plaintiffs' counsel in one or more cases," *see Doc. No. 8 p. 3 n. 2,* and

- Cooper has not answered any of the interrogatories or produced any of the documents and testimony requested.

Accordingly, the record at the telephonic hearing confirms that the Idar family requested information in Cooper's possession which corresponds to the specific allegations in the Complaint, and Cooper has refused to produce any of that information. Obviously, the Idar family cannot fairly adjudicate the claims in their Complaint if Cooper completely refuses to participate in the discovery process notwithstanding the fact that both Cooper and the Idar family's counsel have possession of the documents at issue, which Cooper refuses to produce in this case.

### II. Cooper Has Needlessly Delayed Discovery and No Stay Should Be Granted

19.     Even before this suit was filed, the Idar family wrote to Cooper on numerous occasions and outlined evidence relevant to this case, *see Ex. 23*, and then asked for discovery on numerous occasions both informally and through the formal discovery process. *See Ex. 24.* Despite months of requests, Cooper has yet to answer

even one interrogatory or answer even one request for production, and has failed to produce a proper privilege log. After such bad faith abuse and delay of the discovery process, the Idar family prays that this Court deny Cooper's request for a stay of the discovery order. Instead, the Idar family asks the Court to enforce the discovery order by imposing some appropriate incentive to encourage Cooper's compliance with the Court's order. The Idar family has no preference whether the Court imposes a fine for each day of Cooper's deliberate non-compliance with the Court's order or extends the deadlines for the Idar family to conduct discovery and disclose experts without simultaneously extending Cooper's deadlines or fashions some other remedy to encourage Cooper's compliance, but the Idar family seeks some relief in terms of Cooper's continued discovery abuse and delay.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Idar family prays that the Court deny Cooper's request to stay the discovery order, sustain their objections to Cooper's affidavits and privilege log, and implement an enforcement mechanism to discourage Cooper's continued abuse and delay of the discovery process.

Respectfully submitted this 11th day of March, 2011.

By:   /s/ John Blaise Gsanger
      John B. Gsanger
      Federal I.D. No. 20883
      State Bar No. 00786662
      **EDWARDS LAW FIRM**
      1400 Frost Bank Plaza (78470)
      P.O. Box 480
      Corpus Christi, TX 78403-0480
      Tel: (361) 698-7600

Fax: (361) 698-7614

ATTORNEY FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I certify that on March 11, 2011, a true and correct copy of the foregoing document was served by ECF on all counsel of record, including:

T. Christopher Trent
Raphael C. Taylor
Jon Paul Hoelscher
Johnson, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

/s/ John Blaise Gsanger
John Blaise Gsanger