UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GENEVIEVE IDAR, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-10-217 |
| | § | |
| COOPER TIRE & RUBBER CO., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court are Defendant's Motion for Partial Summary Judgment on

Plaintiffs' and Intervenors' Claims for Punitive Damages (D.E. 74), Plaintiffs' and Intervenors'

Motion for Partial Summary Judgment on Certain Affirmative Defenses (D.E. 75), and

Defendant's Motion for Summary Judgment as to Intervenor Amy Farmer's Negligence Per Se

Claim (D.E. 76).  For the reasons stated herein, Defendant's Motion for Partial Summary

Judgment on Plaintiffs' and Intervenors' Claims for Punitive Damages is DENIED.  (D.E. 74).

Plaintiffs' and Intervenors' Motion for Partial Summary Judgment on Certain Affirmative

Defenses is GRANTED IN PART and DENIED IN PART, as detailed further below.  (D.E. 75.)

Defendant's Motion for Summary Judgment as to Intervenor Amy Farmer's Negligence Per Se

Claim is DENIED.  (D.E. 76.)

## I.      Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are

completely diverse and the amount in controversy exceeds the sum of $75,000.

1 / 26

## II.      Background

### A.      The Vehicle Accident

This lawsuit arises from a vehicle accident which occurred on July 10, 2009 in Live Oak County, Texas.  On the day of the accident, Intervenor Amy Farmer was driving a 1995 Ford Aerostar Van.[1]  The vehicle was equipped with seven seats and seven seatbelts.  The vehicle was occupied by nine people: the driver, Amy Farmer; front seat passenger, Adeline Farmer; Amy Farmer's daughter, Genevieve Idar; and Genevieve's six minor children.

While traveling northbound on Interstate 37, the van's left rear tire (the "subject tire") suffered a tread and top/belt detachment.  Amy Farmer lost control, and the van rolled.  All of the vehicle occupants (except for front seat passenger, Adeline Farmer, who is not a participant in this lawsuit) were allegedly injured as a result of the accident.  One of the children, eleven-year-old A.I., who was seated in the second row seat of the van, was ejected from the vehicle and died at the scene.  (D.E. 1; D.E. 74 at 1-2.)

On July 8, 2010, Plaintiffs Genevieve Idar and her six minor children filed suit against Defendant Cooper Tire & Rubber Company ("Cooper"), the designer and manufacturer of the subject tire.  (D.E. 74 at 13.)   On February 23, 2011, the driver of the van, Amy Farmer, intervened in the lawsuit seeking damages for her own personal injuries as well as bystander claims allegedly suffered in the accident. (D.E. 51 & 52). On February 18, 2011, the deceased minor A.I.'s father, Steven Allen Idar, intervened in the suit as a wrongful death beneficiary. (D.E. 46; D.E. 47).

According to Plaintiffs' and Intervenors' First Amended Complaints, the cause of the accident was the negligent design and/or manufacture of one of the van's tires, a Cooper Trendsetter P215/75R14, which was made at Cooper's Tupelo, Mississippi plant in 2003.  They

---

[1] The van was owned by Mr. Rawnsley Dibenedetto.

seek a variety of damages, including but not limited to actual damages, mental anguish, loss of consortium, lost earnings, physical impairment, and punitive damages.  (D.E. 23 at 27; D.E. 52 at 28.)

Cooper raises several affirmative defenses, including comparative responsibility of Plaintiffs, intervening acts of third parties, compliance with federal regulations governing tires, and nonuse or improper use of restraints. (D.E. 26; D.E. 67.)

### B.      Summary Judgment Evidence of the Negligent Design and/or Manufacture of the Subject Tire

In support of their claims on summary judgment, Plaintiffs and Intervenors have adduced the following evidence of Cooper's liability based on its designing and manufacturing of the allegedly defective tire:[2]

First, to support their allegation that a defective Cooper tire caused the accident, Plaintiffs point to the deposition of Texas Highway Patrol Trooper Jazmin Garcia, who performed an investigation of the crash site.[3]  Trooper Garcia wrote down a "Code 12" in her investigation report, which signifies that "defective or slick tires" may have contributed to the crash.  (D.E. 75, Ex. 1 at 54-55, 57-58).[4]

Second, Plaintiffs adduce a variety of documentary evidence to support that, beginning as early as 1994, Cooper had subjective knowledge of problems involving separations between the

---

[2] Because much of this evidence is filed under seal, the Court cites only to public documents.
[3] Trooper Garcia is trained in crash investigation.  (D.E. 75, Ex. 1 at 7-8.)
[4] When asked what a "Code 12" or "defective or slick tires" means, Trooper Garcia stated:

A: The tire was — basically the tire was not good for the roadway.  It lost its tread as…they were on their way — on the roadway.

Q: So you marked 12 because the tire lost its tread?

A: That was the — yes, sir.  That was the factor of — that's the reason the accident happened.

(D.E. 75, Ex 1 at 55.)

belts in Cooper's tires.   For example, in January 1998, a team including Tire-Wheel Systems and World Wide Purchasing representatives traveled to Cooper's Findlay, Ohio headquarters and Cooper's Albany, Georgia production facility to perform a potential supplier assessment, advising Cooper beforehand that the team would assess Cooper's Leadership, Technology, Manufacturing, and Quality.  (D.E. 65, Ex. 5.)  The team's overall assessments were summarized in a February 18, 1998 letter as follows:

> Research and Development has a few capabilities that are contemporary with the rest of the tire industry; however, overall technical capability is very limited.  Significant testing, analysis, and modeling capability would have to be installed to meet current OE tire performance requirements and competitive performance levels.  Cooper's manufacturing capability, while contemporary, lags the current OE industry level of automation, control, precision and competitive performance levels.  Cooper's quality philosophy is dated significantly, relying on repeated inspections and repair much more heavily than root cause analysis, corrective action and continuous improvement.

(Id.)

Third, Plaintiffs adduce a variety of documents to support that tires of similar style and quality to the subject tire were eventually deemed by Cooper to have defective tread separators.  For example, on October 6, 2006, Vincent Castellaneta, manager of Consumer Quality Systems, wrote a letter to a Cooper Tires dealer stating that Cooper had decided that "a defect which relates to motor vehicle safety exists" in a number of Cooper tires, including four varieties of "Cooper Trendsetter" tires (though none of precisely the same size as the subject tire, a Cooper Trendsetter P215/75R14).   (D.E. 77, Ex. 2.)  The letter states: "Cooper Tire & Rubber Company has determined that some of the subject tires may have been produced with non-conforming belt wire coat stock.  If placed in service, the subject tires may develop a belt separation due to a reduced ability to prevent corrosion of the steel wires in an instance where moisture reaches the steel belt possibly resulting in a vehicle crash."  (Id. at 3.)

Finally, Plaintiffs adduce documentation showing that, around 2001, Cooper tested various alternative designs for its tires to mitigate the risk of tread separation.  (D.E. 78, Ex. 25).[5] Alternative designs that Cooper tested in this time frame, but did not incorporate into the subject tire, are apparently marketed overseas by Cooper "to reduce tread separations."  For example, according to Cooper marketing material, one such tire employs a "nylon overlay that increases tread pattern strength and reduces belt separations — the nylon acts as a protective layer making it harder to cut through to the steel belts." (D.E. 77 at 6.)

### C.    The Summary Judgment Motions

Neither party has filed a motion for summary judgment on Plaintiffs' and Intervenors' underlying claims based on Cooper's allegedly negligent design and/or manufacture of the subject tire.  Rather, Defendant has filed motions for partial summary judgment as to Plaintiffs' and Intervenors' Claims for Punitive Damages, (D.E. 74), and as to Intervenor Amy Farmer's Negligence Per Se Claim, (D.E. 76).  Plaintiffs and Intervenors have filed a motion for partial summary judgment as to Cooper's affirmative defenses based on comparative responsibility and Cooper's affirmative defenses based on alleged compliance with applicable federal safety standards.  (D.E. 75).

## III.   Discussion

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies

---

[5] These documents are not cited as they are filed under seal.

which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247.  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Summary judgment

is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000).

> **B.    Defendant Cooper Tire's Motion for Partial Summary Judgment on Plaintiffs' and Intervenors' Claims for Punitive Damages**

Cooper moves for partial summary judgment on Plaintiffs' and Intervenors' claims for punitive damages, arguing that they cannot meet the standard required to recover punitive damages under Texas law because: (1) there is no evidence of gross negligence, malice or fraud by Cooper, (2) Cooper's reliance on regulatory standards in designing its tires precludes a finding of gross negligence or malice under Texas case law, and (3) Cooper's reliance on mandatory safety standards and regulations creates a rebuttable presumption of non-liability under Tex. Civ. Prac. & Rem. Code § 82.008.

Having reviewed the evidence, the Court finds none of Cooper's arguments warrant a determination on summary judgment that no punitive damages may be awarded following a trial.

> **1.    Compliance with Regulatory Standards Does Not Necessarily Preclude a Finding of Malice or Gross Negligence**

In order to obtain punitive damages under Texas law, a plaintiff must prove by clear and convincing evidence that the defendant acted with fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a). This burden of proof may not be satisfied by evidence of ordinary negligence, bad faith, and/or a deceptive trade practice. TEX. CIV. PRAC. & REM. CODE § 41.003(b).

Under Texas law, "malice" is defined as a specific intent by the defendant to cause substantial injury to the claimant. TEX. CIV. PRAC. & REM. CODE § 41.001(7). "Gross negligence" is defined as an act or omission: (A) which when viewed objectively from the

standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety or welfare of others. TEX. CIV. PRAC. & REM. CODE § 41.001(11). "Fraud" is defined as any type of fraud other than constructive fraud. See TEX. CIV. PRAC. & REM. CODE § 41.001(6).

Defendant Cooper contends that there are federal regulations governing the production of tires, such as the Federal Motor Vehicle Safety Standards, and that the subject tire was in compliance with these regulations. (D.E. 83 at 2, ¶2.) Cooper accordingly contends that Plaintiffs and Intervenors cannot be awarded punitive damages on any of their claims, asserting: "Texas courts have embraced the notion that compliance with federal safety standards should bar punitive damages." (D.E. 74 at 8) (citing Miles v. Ford Motor Co., 922 S.W.2d 572, 572 (Tex. App. Texarkana 1996); Lorenz v. Celotex Corp., 896 F.2d 148 (5th Cir. 1990); Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129 (5th Cir. Tex. 1985)).

However, none of the cases that Defendant cites holds that compliance with regulatory standards precludes a finding of "malice" or "gross negligence" for purposes of obtaining punitive damages under § 41.003(a).

In Miles v. Ford Motor Co., a negligent design case against Ford Motor Company based on an allegedly defective restraint system, the appellate court found the undisputed evidence at trial showed Ford "went to great lengths to assay the relative risks and benefits of its restraint system and made a decision based on the evidence it had." 922 S.W.2d at 572 at 589. There was "no evidence" of the culpable state of mind required for a showing of negligence or malice. Id. at 589-90. The court stated in a footnote:

> The general rule is that compliance with regulatory standards does not necessarily absolve a manufacturer from ordinary liability for product defects or negligence. See, e.g., Ramirez v. Plough, Inc., 6 Cal. 4th 539, 863 P.2d 167 (Cal. 1993). But most commentators suggest that compliance with a statutory standard should bar liability for punitive damages. See PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 233 (1984), and particularly footnote 41. **We do not decide that question here. We only find that Ford's reliance on regulatory agencies' studies, coupled with the other evidence showing that it made a careful study and decision on the safety of its restraint system, makes the jury findings of gross negligence and malice unsupported by factually sufficient evidence.**

Id. at 589, n. 7 (emphasis added).  That is: given the evidence of Ford's lack of malice or gross negligence, *including, but not limited to,* Ford's reliance on regulatory standards, the court held the jury's findings of gross negligence and malice were unsupported by the evidence and that the award of punitive damages was improper.  Id. at 590.

In Lorenz v. Celotex Corp., the Fifth Circuit upheld the trial court's jury instruction stating that "compliance with government standards constitutes strong and substantial evidence that a product is not defective."  896 F.2d at 150.  In determining that the instruction correctly stated Texas law, the Fifth Circuit stated: "[Plaintiff] has not cited, and the court has not found, any Texas cases establishing a rule that compliance with government standards is less than strong and substantial evidence [that a product is not defective.]"   Id. at 151 (citing 59 TEX.JUR.3d Products Liability § 67 (1988)) (reporting that the rule in Texas is that "[evidence] of compliance with government safety standards does constitute strong and substantial evidence that a product is not defective…"); see also Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1144 (5th Cir. Tex. 1985) ("Compliance with such government safety standards [in this case, OSHA's asbestos standards] constitutes strong and substantial evidence that a product is not defective.") (citing Simien v. S.S. Kresge Co., 566 F.2d 551, 557 (5th Cir. 1978).)

Although these cases indicate that compliance with governmental safety standards constitutes "strong and substantial evidence" that a product is not defective, see Gideon, 761

F.2d at 1144, none stands for the proposition that compliance with regulatory standards necessarily exonerates a manufacturer of liability for punitive damages.  Indeed, in another Fifth Circuit case involving the liability of a manufacturer for design defects, <u>Dorsey v. Honda Motor Co., Ltd</u>, the Fifth Circuit (albeit applying Florida law) explicitly rejected this argument.  655 F.2d 650, 656 (5th Cir. 1981).  Following a jury trial, the district court had determined that compliance with federal safety standards precluded an award of punitive damages against the defendant, Honda, and set aside the jury's punitive damages award.  In overturning the court's decision, the  Fifth Circuit stated:

> Generally speaking, compliance with regulatory standards may be admissible on the issue of care but does not require a jury to find a defendant's conduct reasonable. <u>See</u> Restatement (Second) of Torts s 288C; W. Prosser, Handbook of the Law of Torts s 36 at 203-04 (4th ed. 1971); <u>Bruce v. Martin-Marietta Corp</u>., 544 F.2d 442, 446 (10th Cir. 1976) (Maryland law); <u>Salmon v. Parke, Davis & Co</u>., 520 F.2d 1359, 1362 (4th Cir. 1975) (North Carolina law); <u>Raymond v. Riegel Textile Corp</u>., 484 F.2d 1025, 1027 (1st Cir. 1973) (New Hampshire law). **Honda offers no persuasive reason why compliance will as a matter of law be merely admissible on the issue of whether the defendant's conduct is reasonable but an absolute defense on the issue of whether its conduct is willful, reckless, or outrageous.** <u>See</u> <u>Silkwood v. Kerr-McGee Corp</u>., 485 F.Supp. 566, 583-86 (W.D.Okl.1979) (compliance with federal standards does not prevent awarding punitive damages if the defendant's conduct is reckless); <u>Gryc v. Dayton-Hudson Corp</u>., 297 N.W.2d 727 (Minn.), cert. denied, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980).

<u>Id</u>. (emphasis added)

In this case, the standard for punitive damages is "malice," "gross negligence" or "fraud," rather than recklessness or willfulness.  § 41.003(a).  Nonetheless, the Fifth Circuit's reasoning in <u>Dorsey</u> applies.  Cooper has not put forward any reason why compliance with regulatory standards, just because it is evidence of due care, should serve as an absolute defense on the issue of punitive damages.  <u>See</u> <u>id</u>.  Under the cases cited above, compliance with regulatory standards constitutes "strong and substantial evidence" that a product is not defective, <u>see</u> <u>Lorenz</u>, 896 F.2d at 150; <u>Gideon</u>, 761 F.2d at 1144, but Cooper's compliance with regulatory

standards will not necessarily preclude a finding that Cooper nonetheless acted with gross

negligence or malice in designing its tires.  See § 41.003(a); Dorsey, 655 F.2d at 656.

     Based on the evidence adduced by Plaintiffs, issues of fact remain as to whether, even if

Cooper did comply with applicable regulatory standards, it nonetheless acted with malice and/or

gross negligence, justifying an award of punitive damages. See TEX. CIV. PRAC. & REM.

CODE § 41.003(a).  Therefore, Cooper's motion for summary judgment on this ground is

denied.

### 2.       Texas Civil Practices & Remedies Code § 82.008

     Cooper also argues that punitive damages are not obtainable based upon Texas Civil

Practice and Remedies Code § 82.008.  § 82.008 provides:

> (a) In a products liability action brought against a product manufacturer ... there is a
> rebuttable presumption that the product manufacturer ... is not liable for any injury to a
> claimant caused by some aspect of the ... design of a product if the product manufacturer
> ... establishes that the product's ... design complied with mandatory safety standards or
> regulations adopted and promulgated by the federal government, or an agency of the
> federal government, that were applicable to the product at the time of manufacture and
> that governed the product risk that allegedly caused harm.

> (b) The claimant may rebut the presumption in Subsection (a) by establishing that:

> (1) the mandatory federal safety standards or regulations applicable to the product were
> inadequate to protect the public from unreasonable risks of injury or damage; or

> (2) the manufacturer, before or after marketing the product, withheld or misrepresented
> information or material relevant to the federal government's or agency's determination of
> adequacy of the safety standards or regulations at issue in the action.

Tex. Civ. Prac. & Rem.Code § 82.008.

     As discussed further below, there is substantial evidence that Cooper complied with

mandatory safety standards in designing its tires and that these standards governed the risk of

tread separation.  See id.  However, Plaintiffs have met their burden on summary judgment to

produce some rebuttal evidence in accordance with § 82.008(b).  At trial, Plaintiffs may be able

to show either that "(1) the mandatory federal safety standards or regulations applicable to the [tires] were inadequate to protect the public from unreasonable risks of injury or damage; or (2) [Cooper], before or after marketing the [tires], withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action."  § 82.008(b).

Cooper's motion for summary judgment on this ground is also denied.

### C.     Plaintiffs' and Intervenors' Motion for Partial Summary Judgment on Certain Affirmative Defenses

Plaintiffs and Intervenors move for partial summary judgment on three of Cooper's affirmative defenses: Acts of Plaintiffs and/or Third Parties as Intervening Causes; Alleged Nonuse of Restraints; and Preemption or Statutory Presumption of No Defect.  (D.E. 75.) Cooper has responded, contending summary judgment for Plaintiffs on these issues is improper. (D.E. 83.)

### 1.     Cooper's Comparative Responsibility Defenses

The Texas comparative responsibility statute provides that, so long as a claimant's responsibility is not greater than 50 percent, "the Court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility."  TEX. CIV. PRAC. & REM. CODE § 33.012(a); see also § 33.001.  Percentage of responsibility is defined as follows:

> That percentage, stated in whole numbers, attributed by the trier of fact to each claimant, each defendant, each settling person, or each responsible third party with respect to causing or contributing to cause in any way, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity violative of the applicable legal standard, or by any combination of the foregoing, the personal injury, property damage, death or other harm for which recovery of damages is sought.

TEX. CIV. PRAC. & REM. CODE § 33.011(4).

Cooper contends that the accident was caused by the negligence of the parties or of a third party over whom Cooper had no control, and that this negligence was a proximate cause of Plaintiffs' and Intervenors' injuries.  (D.E. 67 at 24.)  Cooper argues that, under § 33.012(a), it should be allowed to submit evidence regarding the comparative responsibility of the parties or of third parties and to reduce its damage accordingly.  (D.E. 83.)  Plaintiffs and Intervenors seek summary judgment on Cooper's comparative responsibility defenses with respect to the following contributing causes: (1) the actions of Amy Farmer in her operation of the vehicle, and (2) A.I.'s alleged nonuse of a seatbelt or restraining system.

### a.      Faulty Evasive Action by Driver

Plaintiffs and Intervenors first contend that summary judgment against Cooper on its comparative responsibility defense is proper to the extent that Cooper refers to the actions of Amy Farmer, the driver, in her operation of the vehicle.   They state that there is conclusive evidence that the tire caused the accident and "no evidence whatsoever that any of the Plaintiffs (who were all mere passengers in the vehicle) nor any third party had any role in this crash." (D.E. 75 at 3.)

Both of these contentions are inaccurate.  Although Trooper Garcia indicated following her investigation that a defective tire was a factor in causing the accident, she also indicated that "faulty evasive action" by the driver of the vehicle may have contributed to the accident.  (D.E. 75, Ex. 1 at 54) (Q: [I]t looks like you put factors that contributed as Codes 41 and Code 12, is that correct? A: Correct.  Q: And Code 41 stands for faulty evasive action, correct? A: Correct. Q: And what faulty evasive action were you noting here. A: By faulty evasive action, what I mean is when she [the driver Amy Farmer] over corrected.)  An issue of fact thus remains as to whether Farmer's driving was a proximate cause of the Plaintiffs' and Intervenors' injuries.  This

potentially warrants a reduction in damages due to comparative fault, depending on the jury's findings at trial.  See Omega Contracting, Inc. v. Torres, 191 S.W.3d 828, 844 (Tex. App. - Fort Worth, 2006) (driver's faulty evasive action may constitute comparative fault in causing his own injury in a multi vehicle collision, and is properly submitted to jury in the form of a proximate causation question.); see also Block v. Mora, 314 S.W.3d 440, 449 (Tex. App. - Amarillo, 2009) ("If, but for the plaintiff's negligence, the accident would not have occurred then, depending upon the jury's findings, the plaintiff either partially or wholly caused the accident and the injuries attendant thereto.")  Therefore, Plaintiffs' and Intervenors' motion for summary judgment is denied with respect to the comparative responsibility of Amy Farmer based on alleged faulty evasive action.

### b.     Nonuse of Seatbelt or Restraint System

Defendant also seeks to bar or reduce Plaintiff's damages based on the decedent A.I.'s alleged nonuse of a seatbelt or child restraint system.   Plaintiff seeks summary judgment that the evidence does not show A.I. was unrestrained and that, in any case, Defendant cannot establish the defense of contributory negligence based on A.I.'s alleged nonuse of restraints.  (D.E. 75.)

### (1) Issue of Fact Regarding Seatbelt Usage

Plaintiff seeks a summary judgment ruling that A.I. was restrained.  However, there is some evidence that A.I. was not wearing a seatbelt or otherwise restrained when the crash occurred.  Although the other Idar children and Genevieve Idar all stated in their depositions that A.I. was wearing a seatbelt, (D.E. 75 at 3-4), Trooper Garcia marked A.I. as unbelted in her crash report and gave a citation to the driver Amy Farmer as a result.  (D.E. 83, Ex. C (Trooper Garcia depo.) at 35-36.)  Trooper Garcia's primary basis for reporting that A.I. was not wearing a seat belt was that A.I. was ejected from the vehicle.  (Id. at 36.)

In addition, Defendant's expert Dr. Richard M. Harding states in his affidavit that, based on his examination of, among other things, the Texas Highway Patrol investigation report, photographs, medical records, and the depositions of the parties involved:

> I have concluded that the minor decedent (AI) was, to a reasonable biomechanical probability, unrestrained at the time of the subject event and was, as a consequence, ejected from the vehicle during which process (ejection and ground contact) he was fatally injured.  It is my further opinion, to a reasonable medical and biomechanical probability, that had he been retained within the vehicle by means of an available restraint system, he would not have been ejected, would have sustained less severe injuries, and would not have died.

(D.E. 83, Ex. B (Harding affidavit) at 2.)

Based on the evidence described above, the Court finds there remains a genuine issue of material fact as to whether or not A.I. was properly restrained when he was ejected from the vehicle.

### (2) Admissibility of Evidence of Seatbelt Nonuse

Plaintiffs contend that evidence of A.I.'s nonuse of a seatbelt is inadmissible at trial to reduce or mitigate damages, if any, awarded to Plaintiffs for their injuries.  (D.E. 75 at 5-8) (citing Block, 314 S.W.3d at 447; Carnation Co. V. Wong, 516 S.W.2d 116, 117 (Tex. 1974); Bridgestone-Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 134 (Tex. 1994); Trenado v. Cooper Tire & Rubber Co., No. 4:08-CV-00249, Doc. No. 194 (S.D. Tex. Jan. 26, 2010).)  Defendant argues, in contrast, that seatbelt evidence is admissible in order to show or rebut causation and to mitigate damages.  (D.E. 83 at 16) (citing Hodges v. Indiana Mills & Manufacturing Inc., 774 F.3d 188 (5th Cir. 2006)).

Evidence of seatbelt nonusage is no longer inadmissible under statute.  Prior to its repeal in 2003, Section 545.413(g) of the Texas Transportation Code read: "Use or nonuse of a safety belt is not admissible in a civil trial..." Tex. Transp. Code 545.413(g).  Similarly, Section

545.412(d) read, prior to its repeal in 2003: "Use or nonuse of a child passenger safety system is not admissible evidence in a civil trial ..." Tex. Transp. Code 545.412(d).

On the other hand, the repeal of these sections does not indicate that such evidence is now per se admissible. As another federal district court in the Southern District of Texas recently explained in a similar case against Cooper, the legislature repealed Section 545.413(g), but chose not to replace the provision with any other, indicating that "the legislature no longer wished to dictate to the courts that evidence of seatbelt use must be excluded. Therefore, the legislature has now left it to the courts to decide on a case by case basis whether seatbelt use should be admissible at trial." Trenado, No. 4:08-CV-00249, Doc. No. 194 at 33. "In other words, the legislative intent was to change the admissibility of seatbelt usage from a substantive to a procedural issue. Under the Erie doctrine, a federal court sitting in diversity must apply state substantive law and federal procedural law. Here, therefore, federal procedural law governs the admissibility of seat belt usage at trial." Id. at 36.

Accordingly, this court will admit or exclude evidence of seatbelt usage or nonusage at trial according to the Federal Rules of Evidence. See id.

### (3) Cooper's Defenses Based On Nonuse of Restraints

#### a.      Comparative Responsibility

As explained above, the Texas comparative responsibility statute provides that "the Court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility." TEX. CIV. PRAC. & REM. CODE § 33.012(a). Cooper asserts that "the Plaintiffs' and Intervenors' claims for damages should be barred, in whole or in part, under the doctrine of comparative responsibility for the failure to utilize seatbelts and/or other required safety restraint devices." (D.E. 67 at 25.)

Under the current state of Texas law, Cooper's comparative responsibility defense based on A.I.'s alleged nonuse of restraints cannot stand.  As explained above, the Texas legislature repealed those provisions of the Texas Transportation Code making admission of nonuse of seatbelts or child restraint systems inadmissible in civil trials, leaving it to the courts to determine whether seatbelt usage or nonusage should be admissible at trial. See Trenado, No. 4:08-CV-00249, Doc. No. 194 at 33.  The Texas Supreme Court has held in cases prior to repeal of the Code's provisions that "persons whose negligence did not contribute to an automobile accident should not have the damages awarded to them reduced or mitigated because of their failure to wear available seatbelts."  Carnation, 516 S.W.2d at 117; see also Bridgestone-Firestone, Inc., 878 S.W.2d at 134.

Defendant points to the Fifth Circuit's more recent holding in Hodges that the trial court should have allowed the defendant to admit seat belt evidence on the element of causation for a plaintiff's injuries, notwithstanding the (since repealed) provisions of the Transportation Code. 474 F.3d at 202.  The court held:

> Subsection (g) [of the Texas Transportation Code] prohibits the introduction of seatbelt evidence to show the plaintiff was contributorily negligent. **On the other hand, in secondary-collision product-liability actions, such evidence may be admissible to show, or, as in this action, rebut, the essential element of causation. Seatbelt evidence was necessary for [defendant] to rebut the essential element of causation-whether its door latch was the proximate cause of [plaintiff's] injuries-and, ultimately, to defeat a crashworthiness claim.** Such evidence is not prohibited by subsection (g). Arguably, this is also demonstrated by the repeal of subsection (g), even though that subsection applies here.

Id. (addressing effect of Tex. Transp. Code 545.413(g) because plaintiff's action was filed prior to repeal of subsection (g)) (emphasis added).

However, the court in Hodges specifically distinguished that case as one involving a secondary-collision product-liability action and a claim for crashworthiness.  Id. at 198

("Crashworthiness involves a claim that a defect in the automobile caused the plaintiff's injuries, rather than the underlying accident causing them.")   As the Supreme Court of Nevada recently explained, secondary collision or "crashworthiness" cases raise distinct considerations for a court in deciding whether to exclude seatbelt evidence — the defendant must defend the overall design of its safety restraint system against allegations that defects in the system caused the plaintiff's injuries — and this is why the Fifth Circuit chose in Hodges to allow seatbelt evidence in order to rebut the element of causation.  Bayerische Motoren Werke Aktiengesellschaft v. Roth, --- P.3d ----, 2011 WL 1436499, *9 (Nev., 2011) (citing Hodges, 474 F.3d at 202).[6]

This case, unlike in Hodges, involves a claim that the underlying accident caused Plaintiffs' injuries, not a claim that a defect in the automobile exacerbated those injuries.  474 F.3d at 198.  Cooper manufactured only the allegedly defective tire, not the Ford Aerostar, and it does not need evidence of seatbelt nonuse in order to defend the overall design of the vehicle's restraint system.  See id.  Accordingly, this Court will follow the holdings of Texas courts addressing the seatbelt defense when the underlying accident, not a failed restraint system, is alleged to have caused the plaintiffs' injuries.  See Carnation, 516 S.W.2d at 117.

In Carnation, the plaintiffs failed to wear available seat belts when the automobile they were driving was involved in a collision caused by the negligence of a truck driver.  Id.  The jury found that plaintiffs' failure to wear available seat belts was negligence and the proximate cause

---

[6] The court explained:

> It is one thing to exclude seatbelt evidence and argument in a suit alleging that the accident itself—and therefore the injuries flowing from that accident—were caused by a defect in the automobile. It is another thing to exclude such evidence and argument in a crashworthiness case, where evidence that an automobile was equipped with seatbelts is generally admitted to defend the overall design of the safety restraint system and to defend against the claim that the defect in the safety restraint system was the cause-in-fact of the plaintiffs enhanced injuries, for which liability would not otherwise attach. Thus, "in secondary-collision product-liability actions," seatbelt nonuse may necessarily "be admissible to show, or, as in this action, rebut, the essential element of causation." Hodges v. Mack Trucks Inc., 474 F.3d 188, 202 (5th Cir.2006) (emphasis added) (applying Texas law).

Roth, 2011 WL 1436499 at *9 (remaining internal citations omitted).

of their injuries —50% of the injuries in the husband's case and 70% in the wife's case.  Id.  In upholding the appellate court's reversal of the jury verdict, the Texas Supreme Court stated: "persons whose negligence did not contribute to an automobile accident should not have the damages awarded to them reduced or mitigated because of their failure to wear available seat belts."  Id.

Likewise, in this case, the alleged failure of A.I. to wear a seatbelt, or the failure of his mother and Ms. Farmer to strap him in, did not contribute to the automobile accident, and, under current Texas law, they should not have their damages reduced or mitigated because of this failure.  See id.; see also Ramirez v. Michelin N. Am., Inc., No. 5:07-CV-01032-OLG, Doc. No. 199 (W.D. Tex. Feb., 18, 2010) ("The current state of the law in Texas is that evidence of a plaintiff's negligence antedating the defendant's wrongful conduct is not admissible to reduce or mitigate the plaintiff's damages.") (citing Pool v. Ford Motor Co., 715 S.W.2d 629, 633 (Tex. 1986) (failure to wear available seat belts); Carnation Co., 516 S.W.2d at 117 (same); Kerby v. Abilene Christian College, 503 S.W.2d 526, 528 (Tex. 1973) (driving with an open deliveryvan door); Haney Elec. Co. v. Hurst, 624 S.W.2d 602, 611 (Tex.Civ.App.-Dallas 1981, writ dism'd) (driving with a can of gasoline in the rear of a station wagon); Block v. Mora, No. 07-08-0092-CV, 2009 WL 35421 *7 (Tex.App.-Amarillo Jan. 7, 2009, pet. dism'd) (driving with an unsecured tire in the bed of a pickup truck); Goldberg v. Dicks, No. 12-02-00053-CV, 2004 WL 253250, at *15-16 (Tex. App.-Tyler February 11, 2004, pet. denied) (riding in an open pickup truck bed).)

Therefore, Plaintiff's motion for summary judgment is granted with respect to

Defendant's comparative responsibility defense passed on alleged seatbelt or restraint system

nonuse.[7]

### b.    Mitigation of Damages

Cooper also asserts that A.I.'s alleged nonuse of a restraint system constituted failure to

mitigate damages warranting a corresponding reduction in recovery.  (D.E. 67 at 26.)  However,

this defense does not apply in these circumstances.   The mitigation of damages doctrine requires

an injured party to "exercise reasonable care to minimize its damages if damages can be avoided

with only slight expense and reasonable effort."  Cotton v. Weatherford Bancshares, Inc., 187

S.W.3d 687, 708 (Tex. App. – Fort Worth 2006, pet. denied.)  "[F]ailure of an injured person to

care for and treat his injuries as a reasonable prudent person would under the same or similar

circumstances" can require a deduction for failure to mitigate damages only in the sense that

"damages resulting from such failure are ultimately not proximately caused by the wrongdoer's

acts or omissions, but by the injured person's own subsequent negligence, and are thus not

recoverable from the wrongdoer." Moulton v. Alamo Ambulance Service, Inc., 414 S.W.2d 444,

---

[7] To the extent that Cooper raises the defense of "contributory negligence" based on A.I.'s alleged nonuse of a seatbelt, Plaintiffs' and Intervenors' motion for summary judgment is also granted with respect to this defense. "Contributory negligence is negligence with a 'causal connection with the accident that but for the conduct the accident would not have happened,' as opposed to negligence that 'merely increases or adds to the extent of the loss or injury occasioned by another's negligence.' In Texas, a plaintiff may be contributorily negligent and still recover, but not if her percentage of responsibility for her damages is greater than 50%." Solomon v. T & M Contractors, Inc., 2009 WL 5183788, *2 (Tex.App.-Fort Worth, 2009) (citations removed). Thus, contributory negligence would completely bar Plaintiffs' and Intervenors' recovery based on A.I.'s death if it is found that A.I.'s failure to wear a seatbelt (or his mother's or the driver's failures to strap him in) bore greater than 50% of the proportionate responsibility for A.I.'s death. However, there is no causal connection between A.I.'s alleged nonuse of a restraint system and the accident.  Stated otherwise, wearing a seatbelt or using a child restraint system may have prevented A.I.'s death, but it did not cause it.  See Trenado, No. 4:08-CV-00249, Doc. No. 194 at 41 (citing Torres v. State, 2000 WL 34251147, *5 (Tex. App. – Corpus Christi, 2000, no pet.); see also Bridgestone-Firestone, Inc., 878 S.W.2d at 134 ("a defendant was not permitted to introduce evidence of a plaintiff's failure to wear a seat belt as evidence of contributory negligence") (citing Kerby, 503 S.W.2d 526 (Tex.1973); Carnation, 516 S.W.2d 116 (Tex.1974)); Block, 314 S.W.3d at 448-449 ("That the plaintiff engaged in conduct prior to the accident that somehow increased or added to the extent of his loss or injury does not establish contributory negligence as to the occurrence, i.e., but for his negligence, the accident would not have occurred.") (citing cases).

449 (TEX 1967) (quoting <u>Gulf, C. & S.F. Ry. Co. v. Mannewitz</u>, 70 Tex. 73, 8 S.W. 66, 67 (1888)) (citing Restatement, Torts s 918 (1939); 22 Am.Jur.2d Damages ss 30—32, 38 (1965)).

Here, A.I.'s alleged nonuse of a restraint system did not constitute his or anyone else's "*subsequent* negligence"; rather, A.I. died at the scene of the crash, and there are no allegations he or anyone else failed to treat his injuries to the standard of a reasonable prudent person.  <u>See</u> <u>Moulton</u>, 414 S.W.2d at 449; <u>see also</u> <u>Trenado</u>, No. 4:08-CV-00249, Doc. No. 194 at 39 (finding failure of injured party to wear seatbelt did not constitute "subsequent negligence" warranting deduction in recovery under a "failure to mitigate" theory).  Accordingly, Plaintiffs' and Intervenors' motion for summary judgment on the affirmative defense of failure to mitigate damages due to alleged nonuse of restraints is granted.

### 2.   Cooper's Defenses Based on Compliance with Safety Standards

Plaintiffs and Intervenors lastly seeks summary judgment on Cooper's affirmative defenses based on compliance with federal safety standards and the statutory presumption of no defect under Tex. Civ. Prac. & Rem. Code § 82.008.  The Court has already addressed § 82.008, which provides that:

> In a products liability action brought against a product manufacturer ... there is a rebuttable presumption that the product manufacturer ... is not liable for any injury to a claimant caused by some aspect of the ... design of a product if the product manufacturer ... establishes that the product's ... design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

§82.008(a).  To survive on summary judgment, Defendant must provide evidence of three things: (1) the tire's design complied with mandatory federal safety standards; (2) those standards were applicable to the tire at the time of manufacture; and (3) the standards governed the product risk that allegedly caused the harm to Plaintiffs' and Intervenors.  <u>Id</u>.

Cooper has succeeded in meeting its burden on summary judgment to show that federal statutes governed the design and manufacture of the subject tire.  As set forth in the Affidavit of Anthony Brinkman, a Forensic and Technical Consultant for Cooper, the National Highway Traffic Safety Administration ("NHTSA") instituted testing requirements for passenger tires such as the subject tire in a regulation known as Federal Motor Vehicle Safety Standard 109 ("FMVSS 109").  49 C.F.R. § 571.109.  Mr. Brinkman's Affidavit also suffices on summary judgment to show that Cooper complied with these standards.  Mr. Brink explains that, under the regulation itself, no tires not capable of meeting the regulation's standards may be sold in the United States.  (D.E. 83, Ex. A at 2-4) (quoting 49 C.F.R. § 571.109 S6) ("No tire that is designed for use on passenger cars and manufactured on or after October 1, 1972, but does not conform to all the requirements of this standard, shall be sold, offered for sale, introduced or delivered for introduction into interstate commerce, or imported into the United States, for any purpose.")

Although Plaintiffs claim that FMVSS 109 does not govern the specific risk of tread separation, (D.E. 75 at 9), the evidence refutes this assertion.  49 C.F.R. § 571.109  covers the risk of tire failure when exposed to a variety of stressful conditions. See id. ("This standard specifies tire dimensions and laboratory test requirements for bead unseating resistance, strength, endurance, and high speed performance; defines tire load ratings; and specifies labeling requirements for passenger car tires.")  The risk of tread separation potentially arose from the tire design, which was governed by the federal standard.  Thus, the standard "governed the product risk that allegedly caused harm."  §82.008(a); see also Trenado, No. 4:08-CV-00249, Doc. No. 194 at 26-27 ("[T]he question is not whether the design of the steel-belted radial tire was governed by FMVSS 109, but rather whether the risk of tire failure arising from that design was

governed by the standards of FMVSS 109"). Defendant has met its summary judgment burden to demonstrate that FMVSS 109 covered the risk at issue in this accident.

The Court therefore denies Plaintiffs' and Intervenors' motion for summary judgment on Defendant's §82.008(a) defense.[8]  At trial, Cooper may submit evidence of its compliance under § 82.002(a), and Plaintiffs may try to rebut the presumption of no liability under §82.008(b) by establishing that (1) the mandatory federal safety standards or regulations applicable to the tire were inadequate to protect the public from unreasonable risks of injury or damage; or (2) Cooper, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action. Tex. Civ. Prac. & Rem.Code § 82.008(b).

### D.   Defendant's Motion for Summary Judgment as to Intervenor Amy Farmer's Negligence Per Se Claim

Cooper moves for summary judgment as to its defense that the driver, Amy Farmer, was negligent per se with respect to A.I.'s injuries and death and as to all Plaintiffs' and Intervenors' claims relating in any way to A.I.'s injuries and/or death.  (D.E. 76.)  The basis for Cooper's motion is that Ms. Farmer was in violation of Texas law at the time of the accident because she did not ensure that A.I. was properly restrained in the vehicle she was driving.

As discussed above, there is some evidence that A.I., an eleven year old minor, was not wearing a seatbelt or otherwise restrained in the vehicle; an issue of fact remains as to whether he was properly restrained.  It is also uncontroverted that allowing a child under seventeen years of age to ride in a vehicle without requiring the child to be secured by an available safety belt is

---

[8] However, to the extent that Cooper argues Plaintiffs' claims are preempted, in whole or in part, by federal regulations governing the manufacture and design of tires, including the NHTSA, this defense has no merit.  As the court in Trenado explained, federal preemption is not the proper vehicle by which to address the effect of compliance with federal standards on Cooper's liability.  Trenado, No. 4:08-CV-00249, Doc. No. 194 at 27-31.

an offense under Texas law.  <u>See</u> Tex. Transp. Code § 545.413(b).[9]  The record shows that

Trooper Garcia of the Texas Highway Patrol issued Ms. Farmer a citation as a result of her

alleged failure to restrain A.I.  (D.E. 76, Ex. C).[10]

According to Cooper, the Texas Transportation Code, requiring passengers to wear

seatbelts and to ensure minor passengers are properly restrained, substitutes for the standard of

conduct with regard to supervision of passengers, and that conduct in violation of this standard

constitutes negligence per se.  (D.E. 76) (citing <u>Missouri Pac. R. Co. v. American Statesman</u>, 552

S.W.2d 99, 103 (Tex. 1977) ("Where the Legislature has declared that a particular act shall not

be done, it fixes a standard of reasonable care, and an unexcused violation of the statute

constitutes negligence or contributory negligence as a matter of law.")).  The Court disagrees.

"The threshold questions in every negligence per se case are whether the plaintiff belongs

to the class that the statute was intended to protect and whether the plaintiff's injury is of a type

that the statute was designed to prevent."  <u>Omega</u>, 191 S.W.3d at 840 (citing <u>Perry v. S.N.</u>, 973

S.W.2d 301, 305 (Tex.1998)).  Here, A.I., a minor child, clearly belongs to the class the seatbelt

laws were designed to protect.  His injury and death following an automobile accident is

precisely the injury the laws were designed to prevent.

---

[9] The Code states:

A person commits an offense if the person:

(1) operates a passenger vehicle that is equipped with safety belts; and

(2) allows a child who is younger than 17 years of age and who is not required to be secured in a child passenger safety seat system under Section 545.412(a) to ride in the vehicle without requiring the child to be secured by a safety belt, provided the child is occupying a seat that is equipped with a safety belt.

§ 545.413(b).

[10] The citation from the Texas Department of Public Safety, which was dismissed following completion of deferred disposition terms, was issued by Trooper Garcia for the following violation: "safety belt, child, required to be secured."  (D.E. 76, Ex. C.)

However, this does not end the inquiry, the court then must "determine whether it is appropriate to impose tort liability for violations of the relevant regulations. Id. (citing Perry, 973 S.W.2d at 306).   The court considers the following five factors in determining whether a statute represents the appropriate standard of care: "(1) whether the regulations are the sole source of any tort duty from the defendant to the plaintiff or merely supply a standard of conduct for an existing common law duty; (2) whether the regulations put the public on notice by clearly defining the required conduct; (3) whether the regulations would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the regulatory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and (5) **whether the plaintiff's injury is a direct or indirect result of the violation of the regulations**." Id. (citing Perry, 973 S.W.2d at 306) (emphasis added).   "These factors are not necessarily exclusive, nor is the issue properly resolved by merely counting how many factors lean each way." Id. (quoting Perry, 973 S.W.2d at 306).

As the Court has already explained in regard to Cooper's comparative responsibility defenses, Texas law simply does not bar a plaintiff's recovery from the manufacturer of an allegedly defective product in these circumstances based solely on the plaintiff's failure to wear a seatbelt. See, e.g., Bridgestone-Firestone, Inc., 878 S.W.2d at 134; Carnation, 516 S.W.2d at 117.   Indeed, the Texas Supreme Court has explicitly recognized that failure to wear a seatbelt does not constitute negligence per se barring a plaintiff's recovery. Bridgestone-Firestone, Inc., 878 S.W.2d at 134  ("By enacting a statute mandating the use of a seat belt, however, the legislature could have overruled our decision in Kerby and Carnation and established a basis for a negligence per se defense whenever a plaintiff failed to wear a seat belt. Instead, the legislature added subsection (j) [since repealed] to ratify Carnation 's holding.) (citing Pool v. Ford Motor

Co., 715 S.W.2d 629, 633 (Tex.1986).)  As explained above, the repeal in 2003 of Sections 545.413(g) and 545.12(d) of the Texas Transportation Code does not indicate that the legislature intended to make evidence of seatbelt use or nonuse categorically admissible in civil trials; and it certainly does not indicate that the legislature intended to establish a negligence per se defense whenever a plaintiff fails to wear a seatbelt or whenever a driver fails to strap in a minor passenger.  See Trenado, No. 4:08-CV-00249, Doc. No. 194 at 33.

Accordingly, the Court denies Defendant's motion for summary judgment as to Amy Farmer's negligence per se.

## IV.   Conclusion

For the reasons stated above, Defendant's Motion for Partial Summary Judgment on Plaintiffs' and Intervenors' Claims for Punitive Damages is DENIED.  (D.E. 74.)  Plaintiffs' and Intervenors' Motion for Partial Summary Judgment on Certain Affirmative Defenses is GRANTED IN PART and DENIED IN PART.  (D.E. 75.)  The motion is granted with respect to Cooper's affirmative defenses based on alleged seatbelt nonuse and federal preemption.  The motion is denied with respect to Cooper's affirmative defenses based on comparative fault due to faulty evasive action by the driver and based on statutory presumption of no defect under Tex. Civ. Prac. & Rem. Code § 82.008.  Defendant's Motion for Summary Judgment as to Intervenor Amy Farmer's Negligence Per Se Claim is DENIED.  (D.E. 76.)

SIGNED and ORDERED this 6th day of June, 2011.

_____
Janis Graham Jack
United States District Judge